UNITED STATES, Appellant,

v.

Alan M. COLLINS, 507 98 6579, Private (E-1), U.S. Marine Corps, Appellee.

NMCM No. 9302286.

U.S. Navy–Marine Corps Court of Military Review.

Decided 14 Jan. 1994.

CDR Philip D. Cave, JAGC, USN, Appellate Defense Counsel.

LT Brian C. Lansing, JAGC, USNR, Appellate Defense Counsel.

LCDR Lyle H. Bowen, Jr., JAGC, USN, Appellate Government Counsel.

ORR, Senior Judge:

This case is before us on an appeal by the Government pursuant to Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862, from the military judge's decision to grant the accused/appellee's motion to dismiss the charges for lack of a speedy trial. The appellee was arraigned on 29 October 1993 on ten offenses: an unauthorized absence terminated by apprehension, eight forgeries of separate checks totaling $1,000.00, and uttering one check for $150.00 with the intent to defraud in violation, respectively, of Articles 86, 123, and 123a, UCMJ, 10 U.S.C. §§ 886, 923, 923a. We have reviewed the record and the pleadings and heard oral argument, and we have concluded that the military judge did not abuse his discretion in finding that the Government's delay in bringing this case to trial was unjustified under Article 10, UCMJ, 10 U.S.C. § 810. *See United States v. Kossman*, 38 M.J. 258 (C.M.A.1993).

The military judge made extensive findings of fact that appear both in the transcript of the 29 October hearing and in an attachment to the record, Appellate Exhibit XIII. The following discussion and the attached chronology form the factual predicate for our decision and are derived from those findings, which we have concluded are fairly supported by the record and are not clearly erroneous. *United States v. Burris*, 21 M.J. 140, 144 (C.M.A.1985); *United States v. Bolado*, 34 M.J. 732, 735 (N.M.C.M.R.1991), *aff'd summary disposition*, 36 M.J. 2 (C.M.A.), *cert. denied*, —— U.S. ——, 113 S.Ct. 321, 121 L.Ed.2d 242 (1992).

The judge found that the appellee was arrested at Nellis Air Force Base on 4 July 1993 on suspicion of uttering forged checks, was confined that same day, and was transported to Camp Pendleton on 9 July, where he was continued in confinement. The appellee's immediate commanding officer (CO) was in contact with the staff judge advocate (SJA) at Nellis on 6 July, and the SJA indicated that as soon as all of the checks in question were accounted for they would be sent to Camp Pendleton. On that same day, the CO also contacted the Marine judge advocate assigned to prosecute cases for the

convening authority and provided the Nellis SJA's phone number. Except for about six to eight phone calls from the CO or his First Sergeant to the SJA's office at Nellis, which the CO indicated were often unsuccessful in reaching the SJA, nothing more was done to acquire the checks until they were received at Camp Pendleton approximately 3 months later. The exact day of receipt was unknown, but it was shortly before charges were preferred on 8 October. A request for legal services was not made until 8 September,[1] and a defense counsel was not detailed until 14 October. The charges were referred to trial on 25 October.

The military judge also found that the appellee was confined from 4 to 30 July and, again, from 2 August until the day of arraignment on 29 October 1993. The appellee's release on 30 July was from post-trial confinement resulting from the vacation of a suspended sentence to confinement from a prior special court-martial. The vacation hearing was held on 12 July. The judge

calculated that 104 days passed from the time the appellee was apprehended at Nellis AFB until he was provided a defense counsel on these charges and that the appellee was confined for 102 of those 104 days.[2] He also determined that 88 days of the appellee's confinement since 4 July 1993 to the date of the hearing was pretrial confinement.[3]

As to the nine check offenses, the military judge found that all nine checks[4] were in the custody of the Nellis AFB Exchange and available for forwarding to Camp Pendleton by 13 July 1993, 9 days after the appellee was apprehended. The judge also concluded that Nellis AFB personnel could reasonably have expected all checks written by the appellee to have been processed and returned to them within 15 days of the appellee's apprehension, that all returned checks could have been forwarded to Camp Pendleton by 20 July, and that there was no reason for personnel at Nellis AFB to have held the dishonored checks beyond that date.[5] This

---

1. The delay in formally requesting legal services was caused by the appellee's command waiting to receive the appellee's service record book from Headquarters, Marine Corps. Although a timely request for it was made sometime between 9–12 July, the service record book was received at Camp Pendleton about 4 weeks after the request was made but was not delivered to the appellee's command until the first week of September. The military judge found that the delay in bringing this case to trial, however, was not caused by any factor other than the appellee's unit waiting for the checks to be forwarded from Nellis AFB.

2. The appellee was also confined for 35 days following his return to military control after the termination of his alleged unauthorized absence. He was released from that period of confinement on 6 June 1993 pending approval of his appellate leave request, which was granted on 22 June. The nine check offenses allegedly occurred during the 6–day period from 24–29 June 1992 when the appellee was in a voluntary appellate leave status.

3. The Government did not produce any information concerning the calculation of the appellee's service of the executed portion of his earlier sentence to confinement. All we know from the record is that the appellee was sentenced to 3 months confinement on 11 December 1992, that the convening authority suspended all confinement in excess of 66 days, and the appellee was alleged to have begun his unauthorized absence on 11 January 1993. There is no indication that the appellee was in confinement when he began

his absence. Making a conversion of the sentence from months to days in the light most favorable to the Government, confinement for 3 months in that time frame could be 92 days at most, leaving 26 days to be suspended. The Government submitted no documentation of the vacation hearing and provided no other information concerning the confinement served during July. Nevertheless, if the appellee received any "good time" credit during what was at best 26 days of post-trial confinement, considerably more than 88 days of the total 115 days the appellee was incarcerated from 4 July through 28 October would be pre-trial confinement. Consistent with our calculation, the Government acknowledged during oral argument that there was no way to determine from the record before us how much of the period from 4 to 30 July was actually attributable to the service of the vacated punishment from the earlier court-martial. This essentially concedes that more than 88 days of the appellee's incarceration was attributable to pretrial confinement in connection with these charges.

4. There were actually ten checks, but only the first nine were made the subject of an alleged offense. The tenth check was returned on 13 July 1993.

5. The Government did not offer any evidence from any one at Nellis AFB and did not offer any evidence from the Marine judge advocate who was contacted by the appellee's CO on 6 July. There was some hearsay testimony that that Ma-

conclusion was based upon the appellee's testimony that he received a demand for payment from the Nellis AFB Exchange, Appellate Exhibit XII, at the end of July. Although the demand for payment does not bear a date, it lists the ten checks and the dates each was returned. The latest return date for the nine checks forming the basis for charges preferred against the appellee is 9 July 1993. The Government offered no evidence on this issue, and no evidence was offered to indicate that criminal investigators at Camp Pendleton were ever notified of these offenses or their assistance requested.

In essence, the Government contention is that the six to eight phone calls from the appellee's command to the Nellis SJA's office, the request for the appellee's service record, and the request for legal services during the period from 4 July to 8 October meet the Article 10 standard and that we should be convinced that the military judge abused his discretion in reaching his conclusion that the Government's delay was unreasonable. *Kossman,* 38 M.J. at 262; *United States v. Tibbs,* 15 U.S.C.M.A. 350, 353, 35 C.M.R. 322, 325, 1965 WL 4672 (1965). The Government argues that we should reach this conclusion because the failure of personnel at Nellis AFB to forward the checks should not be attributed to the Government's prosecution of this case at Camp Pendleton.[6] Nevertheless, the Government acknowledges that the burden of proof on this issue rests with it but argues, on the other hand, that there is no evidence in the record of trial to support the conclusion that anyone at Camp Pendleton knew that all of the checks had been received at Nellis, were actually at the Nellis AFB Exchange vice the SJA's office, and were available for forwarding at least 6 weeks before they were actually sent.[7]

Even if, for discussion purposes, we accepted the Government's position that any procrastination by Nellis AFB personnel should not be attributed to the prosecution of this case, we would still conclude that by

October a request for a service record, a request for legal services (delayed 2 months), and six to eight phone calls inquiring about evidence either by a junior officer who was not a judge advocate or a senior enlisted servicemember had crossed the threshold from being reasonable to being unreasonable. This may have been acceptable activity during the first 6 weeks or so but not for 3 months. The Court of Military Appeals acknowledged in *Tibbs* that brief periods of inactivity in an otherwise active prosecution are not unreasonable. 15 U.S.C.M.A. at 353, 35 C.M.R. at 325. The inactive periods in this case, however, were not brief, and the prosecution, for virtually 3 months, was essentially nonexistent.

Accordingly, the Government's appeal is denied.

Senior Judge REED and Judge DeCICCO, concur.

## ATTACHMENT

## CHRONOLOGY

11 Dec 92—SPCM conviction/sentence includes confinement for 3 months

11 Jan 93—Unauthorized absence (UA) alleged to have commenced

23 Apr 93—Alleged apprehension by civilian police

1 May 93—Alleged release to military authorities at Nellis AFB

3 May 93—Pretrial confinement (PTC) ordered at Camp Pendleton for UA offense

6 Jun 93—Released from PTC pending approval of appellate leave request

22 Jun 93—Request granted/placed on appellate leave

24 Jun 93—First of allegedly forged checks cashed at Nellis AFB

4 Jul 93—Apprehended by Nellis AFB personnel for alleged check offenses

---

rine officer may have been in touch with the Nellis SJA during the intervening months.

**6.** *But see United States v. Kuelker,* 20 M.J. 715 (N.M.C.M.R.1985).

**7.** The one witness called by the Government, the appellee's CO, testified that he was aware at the time of the initial phone call to the Nellis SJA that the checks in question had been written at the Nellis AFB Exchange. Record at 12.

6 Jul 93—Appellee's unit commander notified of apprehension and decision made to collect appellee and prosecute

9 Jul 93—Returned to Camp Pendleton in custody and PTC ordered for check offenses

12 Jul 93—Vacation hearing held on suspended SPCM sentence to confinement [suspension apparently vacated]

30 Jul 93—Released from service of sentence to confinement

2 Aug 93—Reconfined in PTC for offenses now pending

8 Sep 93—Appellee's unit commander requests legal services

8 Oct 93—Charges preferred

14 Oct 93—Defense Counsel detailed

25 Oct 93—Charges referred

29 Oct 93—Arraignment/speedy trial motion heard/motion granted