OPINION OF THE U.S. NAVY MARINE CORPS COURT OF CRIMINAL APPEALS ON APPEAL BY THE UNITED STATES
LARSON, Chief Judge:
This is a Government appeal of the military judge’s dismissal of all charges and specifications for lack of speedy trial. We find merit in the appeal and reverse.
The appellee was arraigned on 23 May 1995 on charges of unauthorized absence, false official statements, forgery, adultery, bigamy, and false swearing, in violation of Articles 86, 107, 123, and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 886, 907, 923, 934 (1994), respectively.[1] Before entering pleas, the trial defense counsel moved for dismissal based on a violation of Article 10, UCMJ, 10 U.S.C. § 810 (1994), which provides that “[w]hen any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him.” [2]
*662 The military judge received evidence from both parties and made findings of fact. Record at 144-47. Based upon these findings, he concluded that the Government had not acted with “reasonable diligence” in bringing the appellee to trial. Record at 147. The primary basis for this conclusion was his finding that, of the 106 days between the date the appellee was first confined (14 February) until the date that the trial counsel stated he would be ready to present his case on the merits (31 May), 48 days constituted “inordinate delay.” Id. The military judge granted the motion to dismiss and the trial counsel filed a timely notice of appeal pursuant to Article 62, UCMJ, 10 U.S.C. § 862 (1994).
The Standard of Review
Under Article 62, UCMJ, our review is generally limited to matters of law. With respect to factual matters, we must defer to the findings of the trial judge if those findings are “fairly supported by the record,” United States v. Burris, 21 M.J. 140, 144 (C.M.A.1985) (quoting Marshall v. Lonberger, 459 U.S. 422, 432, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983)), and are not “clearly erroneous.” United States v. Middleton, 10 M. J. 123, 133 (C.M.A.1981), quoted in, Burris, 21 M.J. at 144. Findings by the trial court are “clearly erroneous” when, although there is some evidence to support them, the appellate court is left with the definite and firm conviction that a mistake has been made. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).
Furthermore, when we evaluate whether the military judge’s determination that the prosecution did not proceed to trial with “reasonable diligence” was correct, we must apply an abuse of discretion standard. United States v. Longhofer, 29 M.J. 22 (C.M.A.1989); United States v. Gray, 37 M.J. 1035 (A.C.M.R.1993). If we conclude that his determination is supported by the record, then he has not abused his discretion and we must not disturb his finding on appeal even if we arrive at a different conclusion based upon the same or different facts of record. United States v. Vangelisti, 30 M.J. 234, 241 (C.M.A.1990) (Cox, J. concurring). In other words, we must refrain from simply substituting our own judgment of what “reasonable diligence” is for his.[3]
Finally, we concur with the appellee that the Government bears the burden on appeal to convince us that the military judge fell short of these standards. United States v. Laminman, 41 M.J. 518 (C.G.Ct.Crim. App.1994).
Our review of the military judge’s findings according to the standards set forth above convinces us that his conclusions are not fairly supported by the record and, in addition, that he misapplied the law to the facts of the case. Accordingly, we will reverse his ruling and return the case for' appropriate action.
The Facts
The undisputed facts of record establish that the appellee was first subjected to investigation in late 1993 for crimes arising from his apparent marriage to one woman while married to another. At the time, he was assigned to the Naval Air Station [NAS], Norfolk, Virginia. The investigation into these offenses was completed by November 1993. Charges were preferred based on this investigation but were dismissed by the convening authority when the appellee became an unauthorized absentee in May 1994. He was apprehended by civilian authorities in Oklahoma on 14 February 1995 and incarcerated there for his military offenses. On 17 February, the appellee arrived at the Naval Brig, Norfolk, Virginia, where he remained until the date of trial. His case was resurrected in the office of the NAS staff judge advocate [SJA], who prepared the command’s request to the independent review officer, in accordance with Rule for Courts-Martial *663 [R.C.M.] 305(i), to continue the appellee’s pretrial confinement. Following the R.C.M. 305(i) hearing on 21 February, the SJA’s assistant reviewed the existing investigation, initiated inquiries concerning the termination of the appellee’s absence, and caused charges to be drafted and preferred by 8 March. Record at 144-45.
On that date, the charges and allied documentation were forwarded to the local Naval Legal Service Office [NLSO] for prosecution with a request to conduct a preliminary investigation pursuant to Article 32, UCMJ, 10 U.S.C. § 832 (1994). NLSO personnel rejected the package as lacking some necessary evidence. During the next week, that evidence was obtained and the NLSO accepted the package on 15 March. An investigating officer [I.O.] and counsel were soon assigned, and an order convening the Article 32 investigation was signed on 20 March. Record at 145- 46.
The Article 32 investigation hearing was not held until 24 April. During this interim period, the trial counsel was involved in two complicated general courts-martial, one from 27-31 March and the other from 17 to 20 April. In addition, the originally detailed defense counsel was also assigned to the first of these trials and, following that, was ordered to report for temporary duty aboard ship beginning 3 April. She had not then met or formed an attorney-client relationship with the appellee. On 3 April, a new counsel was appointed to represent him. Record at 146- 47.
The hearing date of 24 April was agreed upon by the I.O. and the two counsel at a meeting on 10 April. It was apparently the first available date that suited the schedules of all of them. The hearing was not complicated, consisting of only one live witness and some documentary evidence. The I.O. completed the investigation report on 1 May, recommending trial by special court-martial. His report was received by the special court-martial convening authority on 3 May. That officer concluded that a general court-martial was appropriate and signed a recommendation to that effect on 11 May. The report and the recommendation were delivered to the general court-martial convening authority the next day. The Article 34, UCMJ, 10 U.S.C. § 834 (1994), advice was completed by the SJA on 15 May, and the case was referred to a general court-martial on 16 May. The appellee was served with the charges on 17 May and, as noted above, exercised his right to the 5-day waiting period when he was brought to trial on 19 May. Arraignment was held and the speedy trial motion heard on 23 May. At that session, the trial counsel represented that the earliest he could present his case-in-chief would be 31 May. Record at 146-47.
Although he described the entire period of pretrial confinement as excessive, the military judge identified five distinct periods of time within the above chronology which, in his opinion, constituted inordinate delay. These five are set forth as follows.
8 to 15 March..........between preferral and final receipt by the NLSO;
15 to 20 March.........between receipt by the NLSO and the signing of the Article 32 appointing letter;
20 March to 10 April — between the Article 32 appointing letter and the request for a hearing date;
I to 11 May............between completion of the Article 32 report and forwarding to the convening authority;
II to 16 May...........between receipt of the Article 32 report by the convening authority and referral.[4]
The cumulative total of the number of days contained within these five periods is 48, which is the number of days the military judge considered to be inordinate delay.
The Law
The law interpreting the mandate in Article 10, UCMJ, has changed considerably in recent times. Gone is the presumption, created by the Court of Military Appeals in United States v. Burton, 21 C.M.A. 112, 44 C.M.R. 166 (1971), of a violation of the mandate that arose when an accused was de *664 tained in pretrial confinement in excess of 90 days. In United States v. Kossman, 38 M.J. 258 (C.M.A.1993), our superior Court overruled Burton and restored the pr e-Burton standard of “reasonable diligence” in determining whether the prosecution’s progress toward trial for a confined accused was speedy enough to satisfy Article 10. That standard was best described by the Court in United States v. Tibbs, 15 C.M.A. 350, 35 C.M.R. 322 (1965). In Tibbs, the Court made it clear that reasonable diligence does not require constant motion, and that the Government is permitted “brief periods of inactivity in an otherwise active prosecution” without violating the accused’s right to a speedy trial under Article 10, UCMJ. 15 C.M.A at 353, 35 C.M.R. at 325. Conversely, when it is shown that the Government could readily have gone to trial much sooner but negligently or spitefully chose not to do so, an Article 10 violation may have occurred. Kossman, 38 M.J. at 261.
Discussion
Before we discuss whether the military judge applied the law set forth above correctly, we will first examine the sufficiency of his factual findings. We find that his computation of 48 days as inordinate delay is not fairly supported by the evidence. The uncontroverted testimony of representatives from every office that dealt with this court-martial establishes that specific steps toward trial were accomplished during many of these 48 days. During the first period, 8 to 15 March, notwithstanding the rejection of the Article 32 request package by the NLSO, evidence necessary to prosecute was obtained.[5] Record at 94-95. During the second period, 15 to 20 March, the identities of the Article 32 participants were determined by their respective superiors, this information was relayed to the special court-martial convening authority, and that officer signed a letter appointing them. During the third period, 20 March to 10 April, circumstances required the appointment of another defense counsel, and a hearing date was determined. During the fourth period, 1 to 11 May, the Article 32 hearing report was delivered to the special court-martial convening authority, it was reviewed by his SJA (and apparently by the convening authority himself because he disagreed with the LO.’s recommendation), he and his SJA discussed it, and he signed a letter forwarding it to the general court-martial convening authority. Record at 118-119. Finally, during the last questionable period, 11 to 16 May, the report was delivered to the ultimate convening authority, his SJA reviewed it and prepared the Article 34 advice, and the case was referred to a general court-martial. Record at 50-51.
While some of this collective period of 48 days can be fairly labeled “delay” — some possibly “inordinate delay” — a fair amount of it was used to accomplish the steps necessary under the Uniform Code of Military Justice to bring the appellee to trial by general court-martial. The label “inordinate delay” suggests that very little was accomplished and that characterization is simply at odds with the undisputed evidence. As noted at the outset, the conclusion of the military judge that the Government had not exercised “reasonable diligence” in bringing the appellee to trial was primarily based on his view of these cumulative 48 days as inordinate delay. Because we do not believe this view is fairly supported by the evidence, we likewise do not accept the conclusion drawn from it that the Government failed to exercise reasonable diligence. Throughout these segments of time, steady — albeit not the most expeditious — progress toward trial by general court-martial was made.
In addition to his inaccurate characterization of the evidence, the military judge misapplied the pr e-Burton case law that permits the Government brief periods of inactivity in an otherwise active prosecution and does not require constant motion. Tibbs, 35 *665 C.M.R. at 325. He did acknowledge the existence of that particular guideline in determining reasonable diligence, Record at 147, but his ruling does not reflect that he applied it to the facts before him. The periods of inactivity that surround the accomplishment of the specific events noted above can fairly be described as brief in length. The longest is 21 days (from 20 March to 10 April), and the rest are half that or less. Even during the 21-day period, a new defense counsel had to be appointed, and the trial counsel was preparing, or was actually in court, for two complicated general courts-martial. Record at 146. None of these periods approaches the lengths of those identified in typical pre-Burton cases that led to dismissal of charges based on an Article 10 violation. See, e.g., United States v. Hubbard, 21 C.M.A. 131, 44 C.M.R. 185 (1971) (reversing conviction for violation of Article 10, UCMJ, where aggregate period of inactivity totaled 47 days); United States v. Weisenmuller, 17 C.M.A. 636, 38 C.M.R. 434 (1968) (reversing conviction due to unexplained delay of 72 days between confession and referral). See also United States v. Collins, 39 M.J. 739 (N.M.C.M.R.1994) (denying Government appeal in a post-Kossman case where during a 3-month delay only 6-8 phone calls were made to find missing evidence). Our assessment is that the military judge held the Government to a higher standard of diligence than the law requires.
In Laminman, which is a post-Kossman case, our Coast Guard brothers, in a split decision, upheld the trial judge’s dismissal based on denial of speedy trial under Article 10, UCMJ. The majority agreed with the military judge that the Government had not “filled in the blanks,” i.e., presented sufficient evidence to explain why it took as long as it did to bring Laminman to trial. By contrast, in this case, the military judge had before him a considerable amount of evidence that told him what the various participants were doing. There was testimony concerning the other demands placed upon those charged with bringing the appellee to trial and, in particular, the other courts-martial the trial counsel was required to prepare for and prosecute. As others have noted before us, “[c]ourt-martial is not the only game in town, nor the accused the only person for whom a given commander [to this we would add: a given Naval Legal Service Office] is responsible.” United States v. Lilly, 22 M. J. 620, 623 (N.M.C.M.R.1986).
Finally, we find, in Kossman, another guideline that helps us determine whether the delay in bringing the appellee to trial amounted to an Article 10 violation. It is clear from his findings that the military judge believed that the prosecution could have progressed more quickly to trial. We agree with that observation. However, neither Kossman nor any of the pre-Burton cases on which it is based, establishes as a test for reasonable diligence, whether the Government could have gone to trial sooner. In Kossman, the Court does express the view that if the Government could have gone to trial sooner “but negligently or spitefully chose not to,” then an Article 10 motion would lie. 38 M.J. at 261 (emphasis supplied). Here, there is no evidence that the Government chose not to proceed to trial sooner out of negligence or spite. The evidence fairly supports the conclusion that the periods of inactivity or delay in this case were primarily the result of the press of other business and were not excessive in duration.
For the reasons stated above, we find that the appellee’s right to a speedy trial under Article 10, UCMJ, was not violated and that the military judge erred as a matter of law when he granted the appellee’s motion to dismiss the charges.
Disposition
Accordingly, the appeal is granted. The record of trial is returned to the military judge for further proceedings consistent with this opinion.
Senior Judge WELCH and Judge DOMBROSKI concur.

. The appellee first appeared at court-martial on 19 May but exercised his right to a 5-day waiting period between the service of charges and trial by court-martial, and the military judge adjourned until 23 May.

. Whether the appellee was denied his right to speedy trial based upon the other sources of that right in military law — namely the Sixth Amendment, see Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and Rule for Courts-Martial 707 — is not at issue here. Also, the first feature of Article 10, UCMJ, i.e., whether the appellee was immediately informed of the charges against him, played no part in the ruling by the military judge and will not be addressed further.

. Although it is not stated directly, we believe that the abuse of discretion standard generally applied to a review of factual conclusions made by a trial judge is necessarily incorporated in the standard to be applied to review of factual matters in Government appeals set forth in United States v. Burris, 21 M.J. 140 (C.M.A.1985). Stated another way, if we conclude that the judge’s findings are not supported by the record or are clearly erroneous, we have necessarily found that he abused his discretion in making them.

. The military judge identifies the end of this 11-16 May period as the date the special court-martial convening authority’s recommendation and the Article 32, UCMJ, report were received by the generad court-martial convening authority. In fact, the undisputed evidence establishes that the general court-martial convening authority received the entire package no later than 12 May. Record at 109. 16 May was the date of referral. Charge Sheet.

. This opinion should not be read as approving this practice of rejecting a request for trial services from a convening authority by personnel of the Naval Legal Service Command because of perceived flaws in the state of the evidence. While it is not our place to assess administrative procedures such as these in the abstract, it is our place to comment on such measures when they may adversely affect an accused’s right to a speedy trial. We fail to understand why the missing evidence could not have been pursued at the same time the procedures necessary to convene and schedule an Article 32 hearing were accomplished.