UNITED STATES, Appellee

v.

Joshua G. HATFIELD, Mess Management Specialist Second Class
U.S. Navy, Appellant.

No. 96–6001.
Crim.App. No. 95 0991.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 1, 1996.

Decided April 16, 1996.

For Appellant: *Lieutenant Gerard W. Wittstadt, Jr.*, JAGC, USNR (argued); *Captain Timothy C. Young*, JAGC, USN, and *Lieutenant Leslie K. Burnett*, JAGC, USNR (on brief).

For Appellee: *Commander D.H. Myers*, JAGC, USNR (argued); *Colonel Charles Wm. Dorman*, USMC (on brief).

*Opinion of the Court*

COX, Chief Judge:

This is a speedy-trial appeal. At trial, the military judge granted appellant's *in limine* motion to dismiss the Charges and specifications for want of a speedy trial. Art. 10, Uniform Code of Military Justice, 10 USC § 810. The Government took an interlocutory appeal of this ruling to the United States Navy–Marine Corps Court of Criminal Appeals. Art. 62, UCMJ, 10 USC § 862 (1983). That court held that, under the circumstances, "the military judge erred as a matter of law" in granting appellant's motion. Accordingly, the court granted the government appeal and ordered the record of trial returned to the military judge for further proceedings. 43 MJ 662, 667 (1995). It is the correctness of this ruling that is now before us.[1]

Article 10 of the UCMJ provides in pertinent part:

---

1. Appellant states the issue as follows:
WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS ERRED WHEN IT FOUND THAT APPELLANT'S RIGHT TO A SPEEDY TRIAL UNDER ARTI-

CLE 10 WAS NOT VIOLATED AND THAT THE MILITARY JUDGE ERRED AS A MATTER OF LAW WHEN HE GRANTED APPELLANT'S MOTION TO DISMISS.

When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him.

In *United States v. Kossman*, 38 MJ 258 (CMA 1993), we rejected the notion that a court or Presidentially mandated 90– or 120–day speedy-trial rule invariably insulates the Government from Article 10 speedy-trial challenges. In our view,

3 months is a long time to languish in a brig awaiting an opportunity to confront one's accusers, and we think Congress thought so, too. Four months is even longer. We see nothing in Article 10 that suggests that speedy-trial motions could not succeed where a period under 90– or 120–days is involved. At the same time, we recognize that there are many circumstances that justify even longer periods of delay. However, where it is established that the Government could readily have gone to trial much sooner than some arbitrarily selected time demarcation but negligently or spitefully chose not to, we think an Article 10 motion would lie.

38 MJ at 261.

Taking solace from the fact that a military judge on the scene initially determines whether the conditions in place warrant the delay, we observed:

Undoubtedly, military judges are far more sensitive than are we to the realities of military practice. Some cases are obviously more convoluted than others and necessarily take longer to process. In addition, the logistical challenges of a world-wide system that is constantly expanding, contracting, or moving can at times be daunting. Often operational necessities add a further layer of complexity unimagined by the civilian bar. Even ordinary judicial impediments, such as crowded dockets, unavailability of judges, and attorney caseloads, must be realistically balanced.

Id. at 261–62.

In the instant case, the military judge was clearly mindful of these considerations as he superintended the extensive evidentiary hearing on the motion. As the evidence revealed, appellant was fully investigated at Naval Air Station (NAS), Norfolk, Virginia, in late 1993 and early 1994, for a series of charges arising from an allegedly bigamous marriage. These charges include: making false official statements and records; forgery; false swearing; adultery; and bigamy. *See* Arts. 107, 123, and 134, UCMJ, 10 USC §§ 907, 923, and 934, respectively. The investigation ultimately culminated, in March 1994, in the preferral and referral of charges to a special court-martial.

However, on April 11, 1994, appellant absented himself without leave from Naval Air Station, Norfolk, and the Charges were subsequently withdrawn from the special court-martial. Appellant remained absent until February 14, 1995, when he was apprehended and confined by civilian authorities in Oklahoma. He was returned to the Norfolk brig for confinement on February 17, 1995. Essentially the same Charges were reinstituted, in addition to the unauthorized absence, and they were referred to a general court-martial.

After the evidentiary hearing on the speedy-trial motion was completed, the military judge entered extensive findings of fact regarding the processing of appellant's case. *See* Appendix.

The judge concluded that it had taken "an excessively long time to shepherd this uncomplicated and unproblematic case to trial." Pointing to five specific time intervals totalling 48 days, in which little or nothing was accomplished with respect to moving the case toward trial, the judge observed that "you can combine a lot of brief periods of inactivity to comprise a long and oppressive span of confinement." These 48 days, coupled with the other events, "caused 106 days of confinement to unnecessarily accumulate before the accused c[ould] be brought to trial," in the judge's view.

The Court of Criminal Appeals, however, disagreed with the military judge. It opined that "his computation of 48 days as inordinate delay ... [was] not fairly supported by the evidence." Reviewing the testimony and documentation, that court detected "specific

steps toward trial [that] were accomplished during many of these 48 days." While agreeing that "some of this collective period of 48 days can be fairly labeled 'delay'—some possibly 'inordinate delay,'" the court determined that "a fair amount of it was used to accomplish the steps necessary under the Uniform Code of Military Justice to bring [appellant] to trial by general court-martial." 43 MJ at 666. Finding, further, no evidence that "the Government could have gone to trial sooner 'but *negligently or spitefully chose not to*'" [quoting *United States v. Kossman*, 38 MJ at 261], the appeals court concluded that "the military judge erred as a matter of law when he granted [appellant's] motion to dismiss the charges." 43 MJ at 667.

■ Our reading of the record, however, suggests that the military judge had two concerns about the processing of this case. The first was, indeed, the overall lack of forward motion toward resolving this relatively simple, pre-investigated case. His second concern involved the appointment of defense counsel. Noting a few salient dates, we agree with the military judge in both respects.

On February 17, 1995, appellant hit the Norfolk brig. *NEARLY A MONTH LATER*, on March 15, his defense counsel was first "identified"! On April 3, moreover, a substitute defense counsel was identified to replace the initial defense counsel, because the initial counsel—*WHO HAD NEVER MET APPELLANT*—was being reassigned! On April 10, a week shy of *2 MONTHS* after appellant hit the brig, trial counsel "started talking about scheduling the [Article] 32" investigation. And so it went.

The Court of Criminal Appeals focused on "steps" it saw being taken. For example, one of the "reasons" for the late appointment of defense counsel was that such appointments apparently did not occur in that command until the paperwork was right.[2] Here the Naval Legal Services Office (NLSO), Mid–Atlantic, bucked the charges and associated papers back to the NAS Legal Office on

March 9, 1995 (the day after charges were preferred), because some documentation was missing. When, on March 15, NAS Legal got the paperwork right, NLSO "identified" the initial defense counsel. Mind, the Government didn't take appellant out of the brig because some papers were missing. It is just that their mechanism for getting him a defense counsel was not triggered by confinement, but by some internal level of comfort with their own paperwork! *Cf. United States v. King*, 30 MJ 59 (CMA 1990).

What the military judge had to say about this is well taken:

Yeah, but what the Government has done is just bring the processing of the case to a complete stop. It's not like they're gathering evidence and preparing for a[n Article] 32 [pretrial investigation]. The Government tells itself that everything is stopped, we're not proceeding anywhere. We're not going to proceed to the 32, we're not going to assign counsel, we're not going to identify an IO so the appointing letter can be done, so things can get moving. What we're going to do is we're going to come to a complete stop in activity because we're not satisfied we have a couple of documents that we need. You have a viable preferral which the command wants to go to a 32 and the Government says, "No, we're not going to do anything with this until you get a couple of documents." So, that's the problem I have with that period of time. I mean, the Government has stopped processing the case basically.

■ As this record makes clear, the military judge gave due consideration to all of the factors we indicated in *United States v. Kossman, supra.* As we said there:

Article 10 does not require instantaneous trials, but the mandate that the Government take immediate steps to try arrested or confined accused must ever be borne in mind. *If our decision today vests military judges with a degree of discretion, so be it.* Judges who can decide difficult questions

---

2. We do not decide this case based upon denial of counsel. *United States v. Wattenbarger*, 21 MJ

41 (CMA 1985), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986).

such as whether a confession was voluntary can readily determine whether the Government has been foot-dragging on a given case, under the circumstances then and there prevailing.

38 MJ at 262 (emphasis added; citation omitted).

In our view, the military judge did not abuse his discretion here.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is reversed. The Charges and specifications are dismissed.

Judges SULLIVAN, CRAWFORD, and GIERKE, and Senior Judge EVERETT concur.

## APPENDIX

MJ: This court will come to order. All those present when the court closed for deliberations are again present. The following are additional findings of fact:

On the 14th of February 1995, the accused was apprehended in Oklahoma and, on the 17th of February he arrived at the Norfolk Brig for confinement.

LNC Stafford, the Discipline Officer of the Naval Air Station Norfolk Staff Judge Advocate Office, oversaw the processing of the accused's case since his return to the Naval Station.

The accused had been programmed for trial by a special court-martial back in late 1993 for all the charges presently referred to this court, except the unauthorized absence Charge. He allegedly embarked on a period of absence so the case could not be tried. This absence ended, of course, on the 14th of February with his apprehension.

The 17th of February was a Friday and Chief Stafford commenced preparation for the IRO [initial review officer] hearing scheduled for the following Tuesday. At some point he reviewed the accused's file and the NCIS investigation that was included therein. Almost a year had passed since Chief Stafford had dealt with the accused's case and he was attempting to refresh his recollection of the supposed offenses to allow him to act as an accuser in the case.

The Chief desired to initiate an investigation into the apprehension of the accused. He thought this important as there might be some facts which could help substantiate a desertion Charge, although he knew he had enough, at least, to support a preferral of a desertion allegation at that time.

Apparently over a period of 5 days, Chief Stafford intermittently telephone[d] Oklahoma in an attempt to gain information concerning the accused's apprehension. It took him 3 days to contact the first officer, who provided the name of the second officer, whom the Chief unsuccessfully tried to contact over the next 2 days[.]

I would note that all the charges, with the exception of the desertion Specification, had been drafted over a year ago and referred to that special court-martial, and a copy of those earlier charges were contained in Chief Stafford's file on the accused.

Although no complicated drafting of charges was required and the investigation of most of the charges was completed, the NAS Legal Office consumed 19 days before preferring the charges and, as I mentioned, five of these days being consumed with periodic phone calls to the Oklahoma Sheriff's Office.

The NAS Legal Office did have weekly docket meetings. The accused's case was on the docket board and would be identified as an important case that required attention.

The Legal Office, from the testimony that were received here, is a busy place with other military justice functions to perform and numerous other tasks to attend to.

The case against the accused remained at the Naval Air Station Legal Office from 17 February to 15 March 1995. Preferral was affected on the 8th of March 1995 and the next day, the 9th of March, Mrs. Perkins from the Legal Office, attempted to deliver the charges and associated papers to the Naval Legal Service Office, Mid–Atlantic, Command Services Department, but they would not accept it. Some additional material was needed. Mrs. Perkins returned to the Legal Office, and because it was late and she

was departing on leave the next day, she left a note for Chief Stafford on the accused's file indicating what documents were required for the Command Services Department. She returned from leave on the 14th of March and discovered that the documents had not been obtained, so she went out and obtained the documents she could get, and again delivered the package to the Naval Legal Service Office.

The case was formally received on the 15th of March. Government counsel, defense counsel and an investigating officer were identified. Mrs. Perkins, at the Legal Office, was notified of the counsel assignments and the identity of the investigating officer so that the appointing order could be prepared. This information was probably conveyed to Mrs. Perkins of the 15th, but she recollects that it was the 16th.

The order was prepared and it was signed by the Commanding Officer of the Naval Air Station on 20 March, 4 to 5 days after the information was provided to the Legal Office.

Over a month has now passed from receipt of the accused at the brig to issuance of the order directing an Article 32 investigation.

So, on 20 March the case finally was in the hands of the Naval Legal Service Office and making its way to an Article 32 hearing. The designated government counsel was unavailable from 27 to 31 March and from 17 to 21 April because of counsel duties in two complicated general court-martials, which involved many witnesses and, no doubt, some preparation time.

The original detailed defense counsel, Captain Woods, was also unavailable from the 27th to the 31st of March because of the *Holmes* case, the same case that the government counsel was involved in.

She was eventually replaced as defense counsel by Lieutenant Smith on the 3rd of April because Captain Woods had TAD orders out of the area.

On the 10th of April, 21 days after the appointing order was signed, government counsel indicated a formal desire that the hearing be held on 13 April, defense desired

17 April, a date on which the government counsel was in court on another case, finally the hearing was set for 24 April by mutual agreement of the parties. The period of time from the date of the appointing order to the date of the Article 32 investigation was 35 days.

The Article 32 investigation, from a review of that packet, was an uncomplicated hearing with only one witness and some documentary evidence submitted. The hearing was completed the same day that it began.

The investigating officer issued his report on the 1st of May 1995. It was retrieved by Mrs. Perkins on the 3rd of May with the investigation and, on the 11th of May, the Commanding Officer of the Naval Air Station Norfolk signed the forwarding endorsement with a recommendation that the charges be referred to a general court-martial.

The package with the CO's recommendation was delivered to Commander, Naval Base, the general court-martial convening authority. It was delivered by Mrs. Perkins on the 12th of May. It was after hours when she arrived so the package was left at the quarterdeck and it was receipted for on the 15th of May, which was the following Monday.

The Article 34, 10 U.S.C.A. § 834 advice was completed on the same day, 15 May, and the referral was [e]ffected the following day, 16 May.

The accused was served on the 17th of May and an arraignment was attempted on the 19th of May, but the accused invoked his right to a 5–day waiting period between service of charges and that session of the court.

Arraignment was held on the 23rd of May 1995 and the government has indicated it cannot proceed to trial until the 31st of May 1995.

There was no speedy trial demand and there are no allegations of prejudice, save the distress of confinement itself.

One hundred and six days will pass before any evidence is received in the case.