UNITED STATES, Appellee

v.

Gregory J. COOPER, Seaman
U.S. Navy, Appellant

No. 02-6001

Crim. App. No. 01-1867

United States Court of Appeals for the Armed Forces

Argued October 15, 2002

Decided January 30, 2003

CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE, EFFRON, BAKER, and ERDMANN, JJ., joined. GIERKE, J., filed a separate concurring opinion.

Counsel

For Appellant: Lieutenant Kevin B. Gerrity, JAGC, USNR (argued); Lieutenant Marcus N. Fulton, JAGC, USNR, and Lieutenant James E. Golladay, JAGC, USN (on brief).

For Appellee: Lieutenant Lars C. Johnson, JAGC, USNR (argued); Colonel R.M. Favors, USMC (on brief).

Military Judges: Nels Kelstrom, Peter J. Straub, and
                 Kurt E. Grunawalt

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

United States v. Cooper, No. 02-6001/NA

Chief Judge CRAWFORD delivered the opinion of the Court.

This case is before us on interlocutory appeal from Appellant's pending court-martial at the Great Lakes Training Center, Chicago, Illinois.  At that court-martial, the military judge dismissed the charges against Appellant, concluding that the Government failed to comply with the speedy-trial requirements of Article 10, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 810 (2002).  From that ruling, the Government appealed to the United States Navy-Marine Corps Court of Criminal Appeals under Article 62, UCMJ, 10 U.S.C. § 862 (2002).  That court reversed the military judge's ruling and remanded the case for further proceedings.  United States v. Cooper, 56 M.J. 808, 812 (2002).  The correctness of that decision is now before us, on appeal by Appellant under Article 67, UCMJ, 10 U.S.C. § 867 (2002).

## Factual and Procedural Background

On March 14, 2001, Appellant was placed in pretrial confinement for his suspected involvement in a large drug distribution ring and unauthorized absence.  On March 19, a magistrate's hearing was conducted to review the lawfulness of this confinement.  See Rule for Courts-Martial 305 [hereinafter R.C.M.].  Appellant was represented by defense counsel at this hearing, and upon its completion, the magistrate decided that continued confinement was appropriate.  Cooper, 56 M.J. at 809.

2

On April 5, new defense counsel was detailed to represent Appellant,[1] and on April 10, charges against Appellant were preferred. On April 26, 16 days after charges were preferred and 43 days after Appellant was ordered into pretrial confinement, the commander appointed the investigating officer. Forty-four days after preferral of the charges, on May 24, an investigation under Article 32, UCMJ, 10 U.S.C. § 832 (2002), commenced. Between the dates of preferral and that hearing, several things occurred, including the consideration and disposition of various defense counsel requests, to include a new pretrial confinement hearing; travel authorization to attend Article 32 hearings in related cases; appointment of a named individual military defense counsel to represent Appellant; production of witnesses for the Article 32; and disqualification of the Article 32 investigating officer and appointment of a new one.

On June 8, the Article 32 investigating officer completed his report recommending a general court-martial, and on June 20, the report was faxed to the trial counsel prosecuting Appellant's case. Five days later, charges in Appellant's case were referred to a general court-martial, and on July 6,

---

[1] The Naval Legal Service Office [hereinafter NLSO] detailed this defense counsel to Appellant's case, independent of the Government's request on April 11, immediately after charges were preferred, that defense counsel be detailed. The NLSO also detailed the defense counsel that represented Appellant at the magistrate's hearing. Cooper, 56 M.J. at 810-11 n.4. No evidence was introduced concerning a NLSO duty officer, or why the NLSO took so long to detail Appellant's defense counsel.

Appellant was arraigned, 114 days into his pretrial confinement. The military judge ruled this arraignment satisfied the 120-day speedy trial clock of R.C.M. 707, and we agree, which is why this appeal concerns only whether Article 10 was violated.[2]

On July 9, ruling on a defense motion, the military judge found that the Government improperly denied Appellant's request for individual military defense counsel and ordered the matter resolved. The military judge did not explain what factors he employed under R.C.M. 506(b)(1)-(2) in reaching this decision. The military judge recognized, however, that if individual military counsel was appointed, the Article 32 hearing might have to be re-opened. He also noted that the Article 32 hearing was defective due to the investigating officer's failure to provide summarized statements of the witnesses. He therefore continued the court-martial proceedings until these issues were resolved, which he speculated could take three weeks. Also on July 9, defense counsel filed a speedy-trial motion seeking dismissal, but he withdrew it in light of the military judge's ruling on the other motion.

On July 16, individual military counsel was appointed, and 25 days later, on August 10, the Article 32 hearing was reopened

---

[2] At trial and on appeal, defense counsel suggested July 6 was not the arraignment date, pointing to various times thereafter the charges were re-referred. However, the military judge concluded these re-referrals "were administrative in nature and reflected identical charges and specifications as the original referred charges. . . .[T]hey are permissible and do not restart the Rule 707 clock. Therefore, [Appellant] was arraigned [on July 6,] within the 120 day requirement of RCM 707."

by the same investigating officer who conducted it previously. That investigating officer had been deployed overseas from July 9 to August 6, and because of this, defense counsel had requested a new investigating officer so the Article 32 hearing could be reopened sooner. The request was denied, however, because the staff judge advocate believed it was more expedient to await the return of the original investigating officer than to appoint a new one.

"No new substantive matters were presented" by either side at the reopened Article 32 hearing. Cooper, 56 M.J. at 810. Consequently, on August 13, the Investigating Officer again recommended a general court-martial, and on August 24, the convening authority re-referred the initial charges. Then on August 30, "[d]efense and trial counsels both submit[ted] prospective dates for motions and trial. All counsel agree[d] on docketing dates." However, on September 7, a new military judge was assigned to the case, and "[a] date [was] determined for motions and trial that [took] into account both government and defense availability."

Finally, on September 26, 196 days into Appellant's pretrial confinement, government and defense counsel litigated Appellant's speedy-trial motion. The next day, the military judge ruled in Appellant's favor and dismissed the charges with

5

prejudice, focusing on three time periods that "brought into question" whether the Government had complied with Article 10's speedy-trial requirements.  The first was the 28 days between Appellant's placement in pretrial confinement and the Government's request that defense counsel be detailed to the case.  See note 1, supra.  The second was the 12 days between the original Article 32 report's completion and its being faxed to trial counsel.  The third was the 32 days between the military judge's order to resolve the issue of individual military defense counsel, and the Article 32 hearing's reopening thereafter.  Cooper, 56 M.J. at 810.

The Government appealed the military judge's ruling to the Court of Criminal Appeals, and as noted above, that court reversed.  In doing so, it stated that "[i]n evaluating whether a military judge's determination that the prosecution . . . [violated Article 10] was correct, we apply an abuse-of-discretion standard."  Id. (citing United States v. Hatfield, 44 M.J. 22, 24 (C.A.A.F. 1996)).  However, the court then conducted what appears to be a de novo review, reexamining each of the time periods questioned by the military judge and concluding not that the military judge abused his discretion, but that "the Government acted with reasonable diligence in bringing the appell[ant] to trial. . . .  The appell[ant] was not denied his right to a speedy trial under Article 10, UCMJ."  Id. at 812.

6

With respect to the first time period, the lower court stated: "Although this delay in appointing counsel was regrettable, we do not find it to be unreasonable under the circumstances." Id. at 811. With respect to the second time period, the court stated: "[W]e do not find this 12 days of delay unreasonable in view of the expeditious . . . referral of charges that occurred a mere 5 days later." Id. And with respect to the third time period, the court held: "[T]his post-arraignment delay was not attributable to the Government for speedy-trial purposes. Once the arraignment occurred, the speedy-trial clock stopped with respect to an Article 10, UCMJ, analysis, because the appell[ant] had been brought to trial at that point." Id. (citing R.C.M. 707(b)(1); United States v. Kossman, 38 M.J. 258, 261 n.3 (C.M.A. 1993)).

Significantly, in reaching their decisions, neither the Court of Criminal Appeals nor the military judge made reference to the factors contained in Barker v. Wingo, 407 U.S. 514 (1972), relevant to Sixth Amendment speedy-trial determinations. However, in United States v. Birge, 52 M.J. 209 (C.A.A.F. 1999), this Court stated that the "appropriate" analysis in determining whether Article 10 has been violated involves consideration of those factors, one of which is "prejudice to the defendant" resulting from the delay. Id. at 212 (quoting Barker, 407 U.S. at 530). And although the military judge did consider

7

prejudice, both he and the trial counsel apparently believed all that was needed to prove it was the pretrial confinement itself.[3] This view of the law is incorrect, as discussed infra.

As a result, we granted review of the following issues:

    I.   WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS APPLIED AN IMPROPER STANDARD OF REVIEW.

    II.  WHETHER THE NAVY-MARINE CORPS COURT OF CRIMIAL APPEALS ERRED WHEN IT FOUND THAT THE TRIAL JUDGE ERRED AS A MATTER OF LAW WHEN HE GRANTED APPELLANT'S MOTION TO DISMISS UNDER ARTICLE 10.

    III.  WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED AS A MATTER OF LAW IN HOLDING THAT POST-ARRAIGNMENT DELAY IS NEVER ATTRIBUTABLE TO THE GOVERNMENT UNDER ARTICLE 10.

    IV.  WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED AS A MATTER OF LAW BY IGNORING THE BIRGE FACTORS IN ANALYZING THE ARTICLE 10 VIOLATION.

Having considered these issues, we now we reverse the decision of the Court of Criminal Appeals, set aside the ruling of the military judge, and hold: First, that the Court of

---

[3] The record of trial reflects the following dialogue between the military judge and trial counsel:

    MJ:  In U.S. v. Hatfield wasn't the only prejudice the fact that he was sitting in the brig in pretrial confinement? . . . [W]asn't the sole prejudice listed as the fact he was in the brig?

    . . .

    TC:  Apparently, the answer is yes, sir.

    . . .

    MJ:  . . . I don't need to find anything more prejudicial if I find that the government has not taken reasonable – has shown reasonable or due diligence to bring him immediately to trial. Defense wins that. I don't have to figure out some other additional prejudice.

    TC:  That's correct, sir.

Criminal Appeals erred when it concluded the standard of review is abuse of discretion when reviewing a ruling the Government violated Article 10.  The standard of review for such a ruling is de novo.  Second, that the Court of Criminal Appeals erred when it concluded arraignment stops the Article 10 speedy-trial clock.  And third, that the Court of Criminal Appeals and the military judge erred by not considering the Birge factors in deciding whether the Government violated Article 10 in this case.

## Standard of Review

In the military justice system, an accused's right to a speedy trial flows from various sources, including the Sixth Amendment, Article 10 of the Uniform Code of Military Justice, and R.C.M. 707 of the Manual for Courts-Martial.  In the federal criminal justice system, defendants' speedy trial rights also emanate from the Sixth Amendment, and from the Speedy Trial Act, 18 U.S.C. §§ 3161-3174 (2002).  In both systems, the standard of review on appeal for speedy trial issues is de novo.

At the outset, we note that in Hatfield, 44 M.J. at 25, we concluded that "the military judge did not abuse his discretion" in ruling on an Article 10 motion.  In light of this comment, it is understandable why the court below believed abuse of discretion was the proper standard of review in this case. Hatfield, however, did not describe abuse of discretion as the

9

standard of review, and we did not have occasion in that case to analyze the relationship between abuse of discretion and de novo review.  We do so now.

The majority of circuit courts that have examined the appropriate standard of review for Sixth Amendment speedy trial issues have adopted the de novo standard.  See, e.g., United States v. Tanh Huu Lam, 251 F.3d 852, 855 (9th Cir. 2001)(standard of review of constitutional speedy trial claim is de novo); United States v. O'Dell, 247 F.3d 655, 666 (6th Cir. 2001)(same); United States v. Lugo, 170 F.3d 996, 1000 (10th Cir. 1999)(same); United States v. Clark, 83 F.3d 1350, 1352 (11th Cir. 1996)(same).[4]

Equally settled is that the circuit courts "review a district court's interpretation of the Speedy Trial Act de novo."  United States v. Hemmings, 258 F.3d 587, 591 (7th Cir. 2001)(quoting United States v. Salerno, 108 F.3d 730, 734 (7th Cir. 1997)).  See also United States v. Salgado, 250 F.3d 438, 453 (6th Cir. 2001).  The district court's factual determinations are accorded deference -- rejected only if clearly erroneous -- but its "[c]onclusions of law under the Speedy Trial Act are reviewed de novo."  United States v. Brown, 285 F.3d 959, 961 (11th Cir. 2002).  See also United States v. Martinez-Espinoza, 299 F.3d 414, 416 (5th Cir. 2002); United

---

[4] But see United States v. Salimonu, 182 F.3d 63, 69 & n.2 (1st Cir. 1999)(applying abuse of discretion standard).

States v. Brickey, 289 F.3d 1144, 1150 (9th Cir. 2002); United

States v. Gonzalez-Arimont, 268 F.3d 8, 11 (1st Cir. 2001);

United States v. Marks, 209 F.3d 577, 586 (6th Cir. 2000);

United States v. Hill, 197 F.3d 436, 441 (10th Cir. 1999).

And finally, in United States v. Doty, 51 M.J. 464, 465 (C.A.A.F. 1999), a case involving a speedy-trial claim under R.C.M. 707, we held in that context: "The conclusion whether an accused received a speedy trial is a legal question that is reviewed de novo . . . [while the underlying] findings of fact are given 'substantial deference and will be reversed only for clear error.'" (Citations omitted.)  Thus, the remaining issue is whether the standard of review for speedy-trial claims under Article 10 should not also be de novo.  In answer, we conclude there is no valid reason why the standard of review for Article 10 appeals should be any different than the one uniformly applied in other speedy-trial appeals in the military and federal systems of justice.

Article 10 states that when a servicemember is placed in pretrial confinement, "immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him."  In United States v. Tibbs, 15 C.M.A. 350, 353, 35 C.M.R. 322, 325 (1965), an Article 10 case, we observed that "the touch stone for measurement of compliance with the . . . [UCMJ] is not constant motion, but

reasonable diligence in bringing the charges to trial. . . .
Brief periods of inactivity in an otherwise active prosecution
are not unreasonable or oppressive." (Citations omitted.)

In Kossman, 38 M.J. at 262, we again said that whether
immediate steps have been taken under Article 10 to inform an
accused of the charges against him and, thereafter, to try him
on those charges depends on whether the Government has used
"reasonable diligence" in accomplishing those tasks. As a
result, for purposes of the issue at hand, the question becomes:
Is this "reasonable diligence" determination made by a trial
judge one that, by its nature, is so subjective and fact-
dependent that this Court is unable justly to review that
determination de novo? The answer to that is no, confirmed by
the reality that appellate courts frequently review de novo the
"reasonableness" determinations of trial judges in a variety of
legal settings. See Ornelas v. United States, 517 U.S. 690
(1996)("reasonable suspicion" determinations made by trial
courts when assessing the constitutionality of police stops are
reviewed de novo); Sicari v. Commissioner of Internal Revenue,
136 F.3d 925 (2nd Cir. 1998)("We review de novo the Tax Court's
legal conclusion as to the [Commissioner's] satisfaction of the
reasonable diligence requirement" when notifying a taxpayer of a
tax deficiency.); Whaley v. Rodriguez, 840 F.2d 1046 (2nd Cir.
1988)(de novo review of Government's reasonableness and due

12

United States v. Cooper, No. 02-6001/NA

diligence in attempting to locate a defendant for purposes of tolling the speedy trial clock); DeWeerth v. Baldinger, 836 F.2d 103, 110 (2nd Cir. 1987)("Where, as here, the issue is the application of a legal standard – 'reasonable diligence'– to a set of facts, review is de novo."); Maloley v. O'Brien & Associates, Inc., 819 F.2d 1435 (8th Cir. 1987)(de novo review of Commodity Futures Trading Commission's determination that investor failed to exercise reasonable diligence in discovering fraud).

We therefore hold that the legal question whether the Government has used reasonable diligence in discharging its duty under Article 10 to take immediate steps to try an accused is reviewed de novo on appeal. There is simply no valid reason why the standard of review for these appeals should be any different than the one applied to similar appeals under the Sixth Amendment, the Speedy Trial Act, and R.C.M. 707.

### Scope of Article 10

In reversing the military judge's ruling dismissing the charges, the Court of Criminal Appeals found that the "delay between the arraignment [on July 6] and the reopening of the Article 32, UCMJ, investigation [on August 10] . . . was not attributable to the Government for speedy-trial purposes." Cooper, 56 M.J. at 811. In arriving at this conclusion, the court reasoned that "[o]nce the arraignment occurred, the

13

speedy-trial clock stopped with respect to an Article 10, UCMJ, analysis, because the appell[ant] had been brought to trial at that point." Id. (emphasis added). The military judge, on the other hand, incorporated that time period into his analysis, as previously discussed.

In ruling as it did, the court below relied primarily on the language of R.C.M. 707, and the fact that R.C.M. 707's protections clearly do not extend beyond arraignment. R.C.M. 707(a) states: "The accused shall be brought to trial within 120 days after the earlier of: (1) Preferral of charges; [or] (2) The imposition of [pretrial] restraint. . . ." R.C.M. 707(b) states: "The accused is brought to trial . . . at the time of arraignment. . . ." Thus, the duty imposed on the Government by R.C.M. 707 is to arraign an accused within 120 days of preferral of charges or pretrial confinement, or face dismissal of the charges. The duty is no more and no less, and is satisfied once an accused is arraigned.[5]

The court below ruled that Article 10's protections also cease when an accused is arraigned. That court did not, however, explain why the language of Article 10 -- which is clearly different than that of R.C.M. 707 -- supports this result. Nor did that court cite to any case where Article 10's

---

[5] Arraignment takes place when a military judge reads the charges to an accused and calls upon the accused to plead. "Arraignment is complete when the accused is called upon to plead; the entry of pleas is not part of the arraignment." Rule for Courts-Martial 904 discussion.

14

language was so construed.  This is significant, because in our view, the plain meaning of Article 10 strongly suggests its protections do extend beyond arraignment.  See United States v. Turkette, 452 U.S. 576, 580 (1981)("In determining the scope of a statute, we look first to its language.").

Once again, Article 10 states: "When any person subject to [the UCMJ] is placed in . . . confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or dismiss the charges and release him."  (Emphasis added.)  Thus, Article 10 does not by its express terms limit its protection to only that period extending up to arraignment.  To the contrary, it imposes an open-ended duty on the Government and the military judge immediately to "try" the accused, a task that is by no means complete at arraignment when one considers the plain meaning of "trying" a case.

To "try" a case is "to examine and resolve (a dispute) by means of a trial"; "to examine and decide (a case) in a law court"; or simply "to examine or investigate judicially." Black's Law Dictionary 1520 (7th ed. 1999); Webster's New World College Dictionary 1538 (4th ed. 2000); Webster's Third New International Dictionary 2457 (1981).  Moreover, to try a criminal case is "to determine legally the guilt or innocence" of a person.  Webster's New World College Dictionary, supra.  In

15

a criminal prosecution, however, no examination or investigation into guilt or innocence has even begun at the time of arraignment, because arraignment precedes the taking of any evidence.  On its face then, Article 10 seems to impose on the Government a duty that extends beyond arraignment to at least the taking of evidence.

Regardless, even if Article 10 was ambiguous as to its scope, the question would still remain:  Given the fact that it does not expressly cease to apply after arraignment, why should Article 10 be so construed?  Nothing in its legislative history compels such a result.  See United States v. Desha, 23 M.J. 66, 68 (C.M.A. 1986)("If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'")(quoting Turkette, 452 U.S. at 580 (citations omitted)).

Nor does our prior case law require such a restrictive reading of Article 10, or even indicate that we would be so inclined.  See Birge, 52 M.J. at 211 ("[E]ven if the Government has complied with RCM 707. . . , the Government's failure to proceed [thereafter] with 'reasonable diligence' would constitute a violation of Article 10.").

More importantly, though, the constitutional right to a speedy trial is a fundamental right.  Barker, 407 U.S. at 515.

16

It is protected both by the Sixth Amendment and by Article 10. Article 10, however, "imposes [on the Government] a more stringent speedy-trial standard than that of the Sixth Amendment." Kossman, 38 M.J. at 259. As a result, that baseline Sixth Amendment standard is relevant to our inquiry, and it can be found in the Speedy Trial Act, which by its express terms extends far beyond arraignment. See 18 U.S.C. §3161(g)(the "period between arraignment and trial" cannot exceed 80 days).[6]

Given that Article 10 protects the right to a speedy trial, and given that it imposes a more stringent standard than the Sixth Amendment, there is no compelling reason to construe its words -- presumed ambiguous for these purposes -- in such a way as to terminate its applicability at arraignment, especially when the less stringent, Sixth Amendment standard, as implemented by the Speedy Trial Act, extends beyond that point.

We therefore hold that the Article 10 duty imposed on the Government immediately to try an accused who is placed in pretrial confinement does not terminate simply because the accused is arraigned. There are undoubtedly times when the Government is not prepared to go forward with its case immediately following arraignment. See Doty, 51 M.J. at 465.

---

[6] This statutory language recognizing the difference between "arraignment" and "trial" strengthens our view that Article 10's plain meaning is that it applies beyond arraignment.

As a result, the protections of Article 10 must extend beyond that point. Id. at 466 (Crawford, J., concurring in the result)(recognizing that Article 10 protection extends beyond arraignment).

Having said that, however, we hasten to emphasize that by the time an accused is arraigned, a change in the speedy-trial landscape has taken place. This is because after arraignment, "the power of the military judge to process the case increases, and the power of the [Government] to affect the case decreases." Doty, 51 M.J. at 465-66. As a result, once an accused is arraigned, significant responsibility for ensuring the accused's court-martial proceeds with reasonable dispatch rests with the military judge. The military judge has the power and responsibility to force the Government to proceed with its case if justice so requires.

Although the speedy-trial landscape changes after arraignment, the mandate of Article 10 imposing an affirmative obligation of reasonable diligence upon the Government does not change. As we have said, Article 10 provides greater protections for persons subject to the UCMJ than does the Sixth Amendment speedy trial right. Kossman, 38 M.J. at 259. Those protections continue until the actual trial commences. While the role and control of the military judge after referral and arraignment are factors to consider in the legal analysis of

18

whether the Government proceeded with reasonable diligence, the Government must itself move diligently to trial and the entire period up to trying the accused will be reviewed for reasonable diligence on the part of the Government. Thus, although "arraignment serves to protect an accused's [speedy-trial] rights," Doty, 51 M.J. at 465, Article 10 protections do not automatically cease upon arraignment.

## Applicability of Birge Factors

In Birge, 52 M.J. at 212, we stated that while "Article 10 issues cannot be resolved simply by determining whether similar delays would have violated the Sixth Amendment under Barker v. Wingo," it is "appropriate" to consider those factors "in determining whether a particular set of circumstances violates a servicemember's speedy trial rights under Article 10." The military judge did not do that in this case. We therefore remand this case to the military judge for reconsideration in light of Birge and this opinion.

## Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed, and the ruling of the military judge dismissing the charges is set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to the military judge presiding over appellant's court-martial. The military judge will reconsider appellant's Article 10 claim

in light of this opinion.  Thereafter, if the military judge

again dismisses the charges, Article 62 will apply.

GIERKE, Judge (concurring):

I agree with the ultimate result in this case, i.e., a remand to the military judge for reconsideration, using the factors set out in United States v. Birge, 52 M.J. 209 (C.A.A.F. 1999). I also agree that the correct standard of review on the ultimate question whether Article 10, Uniform Code of Military Justice, 10 U.S.C. § 810 (2002), has been violated is de novo. See United States v. Doty, 51 M.J. 464 (C.A.A.F. 1999).

However, I write separately to point out that, in my view, de novo review of the ultimate Article 10 issue does not require this Court to disregard the military judge's analysis of each stage in the prosecution of the case. We review the issue de novo, recognizing that military judges are well situated to understand "the realities of military practice," and "to evaluate the "logistical challenges of a world-wide system," "operational necessities," as well as "crowded dockets, unavailability of judges, and attorney caseloads"; and that they "can readily determine whether the Government has been foot-dragging on a given case, under the circumstances then and there prevailing." See United States v. Kossman, 38 M.J. 258, 261-62 (C.M.A. 1993).

In United States v. Hatfield, 44 M.J. 22, 24-25 (C.A.A.F 1996), this Court upheld the military judge's analysis after he had been reversed by the Court of Criminal Appeals, which had

substituted its own analysis and arrived at a different conclusion regarding the reasonableness of the delay.  We concluded in <u>Hatfield</u> that "the military judge did not abuse his discretion."  <u>Id.</u> at 25.  In so concluding, we noted that "the military judge gave due consideration to all the factors" set out in <u>Kossman</u>.  <u>Id.</u> at 24.

    "Abuse of discretion" is a broad term, and in some cases it may mean only that the military judge incorrectly applied the law.  <u>See</u> <u>United States v. White</u>, 48 M.J. 251, 257 (C.A.A.F. 1998) (military judge abuses discretion if decision was "influenced by an erroneous view of the law"); 1 Steven Childress & Martha Davis, <u>Federal Standards of Review</u> § 4.21 at 4-132 (3d ed. 1999) (abuse of discretion has "sliding contextual meaning"); Martha Davis, <u>A Basic Guide to Standards of Judicial Review</u>, 33 S.D. L. Rev. 468, 472-73 (1988), quoted in <u>United States v. Siroky</u>, 44 M.J. 394, 398 n.1 (C.A.A.F. 1996)(no abuse of discretion if decision is "legal").  Thus, in my view, our decision in this case is not inconsistent with our previous decisions in <u>Hatfield</u>, <u>Kossman</u>, and <u>Doty</u>.  Accordingly, I concur.