**UNITED STATES, Appellant,**

v.

**Private E1 Anthony E. McCULLOUGH, United States Army, Appellee.**

**ARMY MISC. 20031217.**

U.S. Army Court of Criminal Appeals.

21 July 2004.

For Appellee: Lieutenant Colonel Mark Tellitocci, JA; Major Allyson G. Lambert, JA; Captain Terri J. Erisman, JA (on brief).

For Appellant: Colonel Lauren B. Leeker, JA; Lieutenant Colonel Margaret B. Baines, JA; Lieutenant Colonel Michael E. Mulligan, JA; Captain Jeffrey L. Phillips, JA (on brief).

Before HARVEY, Senior Judge, MERCK, Senior Judge, and SCHENCK, Appellate Military Judge.

OPINION OF THE COURT AND ACTION ON APPEAL BY THE UNITED STATES FILED PURSUANT TO ARTICLE 62, UNIFORM CODE OF MILITARY JUSTICE

HARVEY, Senior Judge:

The government's timely appeal under Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862 [hereinafter UCMJ], is granted. The military judge's decision to dismiss the charges and specifications with prejudice due to lack of a speedy trial under Article 10, UCMJ, 10 U.S.C. § 810, is vacated. We hold that appellee's right to a speedy trial was not violated.

The government, however, caused Private (PVT) Morales, a potentially exculpatory, defense-requested witness to become unavailable. The government stipulated that appellee distributed cocaine to PVT Morales on two occasions, as alleged in Specifications 6 and 15 of Charge III. If the government cannot produce PVT Morales as a witness at appellee's trial, then the military judge must dismiss these two specifications with prejudice.[1]

## FACTS

The U.S. Army Criminal Investigation Command (CID) investigated allegations of drug possession, use, and distribution involving appellee, eight other soldiers, and one former soldier. On 26 June 2003, appellee was placed in pretrial confinement.

On 2 July 2003 charges were preferred. Appellee was charged with failure to go to his appointed place of duty (four specifications), dereliction of duty, marijuana distribution, and cocaine distribution on specific dates between 15 May and 19 June 2003 (nineteen specifications), and breaking restriction in violation of Articles 86, 92, 112a, and 134, UCMJ, 10 U.S.C. §§ 886, 892, 912a, and 934.

On 28 July, trial defense counsel requested fifteen witnesses, including Private First Class (PFC) Cruz, PVT LeBlanc, and PVT Morales, for appellee's Article 32, UCMJ, hearing. Nine witnesses testified at the hearing; six witnesses, including PFC Cruz, PVT LeBlanc, and PVT Morales, declined to testify, invoking their right against self-incrimination.

The following chronology describes the processing of appellee's case:

| Date of Event | Description | Days Since Previous Event | Cumulative Days of Processing |
|---|---|---|---|
| 26 June 2003 | Start of pretrial confinement | 0 | 0 |

---

1. *See United States v. Talavera,* 8 M.J. 14, 17 (C.M.A.1979) (holding when resolving speedy trial allegations involving multiple specifications, the processing of each specification must be considered separately).

| Date | Event | | |
|---|---|---|---|
| 2 July 2003 | Charges preferred | 6 | 6 |
| 1 Aug. 2003 | Trial defense counsel requested delay of Article 32, UCMJ, hearing from 1 to 18 Aug. 2003. Defense delay approved until 11 Aug. 2003. | 30 | 36 |
| 11 Aug. 2003 | Article 32, UCMJ, hearing held on 11, 12, and 14 Aug. 2003. | 10 | 46 |
| 19 Aug. 2003 | Article 32, UCMJ, report completed, and trial counsel informed CID that no further investigative activity was required | 8 | 54 |
| 11 Sept. 2003 | CID Report completed | 23 | 77 |
| 2 Oct. 2003 | Referral of charges to general court-martial | 21 | 98 |
| 16 Oct. 2003 | Service of referred charges [2] and arraignment | 14 | 112 |
| 28 Oct. 2003 | Defense request for immediate trial on speedy trial motion dated 28 Oct. 2003 | 12 | 124 |
| 6 Nov. 2003 | Motions session-judge orders Article 32, UCMJ, hearing reopened and new pretrial advice | 9 | 133 |
| 13 Nov. 2003 | Motions session-charges dismissed for lack of speedy trial | 7 | 140 |
| 14 Nov. 2003 | Government notice of appeal | 1 | 141 |

The military judge determined that the government complied with Rule for Courts–Martial [hereinafter R.C.M.] 707 speedy trial requirements because appellee was arraigned 112 days after the start of his pretrial confinement.[3] Nevertheless, he decided that Article 10, UCMJ, was violated[4] and dismissed all charges with prejudice. The military judge concluded that the government "fundamentally erred in trying to manipulate trial dates by delaying referral of the accused's case to delay arraignment." Although the military judge found no "evidence of malicious acts by the government," he did find "willful and intentional [government] delays."

The military judge explained that the government did not show reasonable diligence in the prosecution of appellee's case during four distinct periods: (1) between the start of pretrial confinement and the start of the Article 32, UCMJ, investigation; (2) between the completion of the Article 32, UCMJ, report and referral; (3) between referral and arraignment;[5] and (4) between the ordering of a new Article 32, UCMJ, hearing and the government's notice of appeal.[6] Finally, the

2. The government served an incomplete copy of the charges on 2 October 2003; a complete copy of the charges was served on 16 October 2003. Article 35, UCMJ, 10 U.S.C. § 835, provides for a five-day waiting period to ensure the accused has sufficient time to prepare for trial. The defense waived the five-day waiting period between service of charges and trial.

3. See R.C.M. 707(a) (stating that soldier must be brought to trial within 120 days after the imposition of pretrial restraint).

4. In United States v. Kossman, 38 M.J. 258, 261 (C.M.A.1993), our superior court determined that whichever is more favorable to an accused, R.C.M. 707 or Article 10, UCMJ, should be applied, but then noted that R.C.M. 707 provides "good guidance to both the Bench and Bar" for analysis of speedy trial issues.

5. During these fourteen days from 2 to 16 October 2003, the government was preparing for trial in appellee's case and diligently pursuing the prosecution of co-accused. The record of trial and allied papers forwarded with this writ consists of approximately 1,500 pages. " 'Brief periods of inactivity in an otherwise active prosecution are not unreasonable or oppressive.' " United States v. Plants, 57 M.J. 664, 669 (A.F.Ct. Crim.App.2002) (quoting United States v. Tibbs, 15 U.S.C.M.A. 350, 353, 35 C.M.R. 322, 325, 1965 WL 4672 (C.M.A.1965)), pet. denied, 58 M.J. 181 (C.A.A.F.2003) (summary disposition).

6. We disagree with the military judge's conclusion that the period from 6 November 2003, the date the military judge ordered reopening of the Article 32, UCMJ, hearing at trial defense counsel's request, to permit cross-examination of two confidential informants (CIs) to 14 November 2003, the date of the government's notice of

military judge found prejudice to the defense caused by the unavailability of a potentially exculpatory defense-requested witness, PVT Morales.

On 14 November 2003, 141 days after the start of appellee's pretrial confinement, the government notified the military judge of its intention to appeal his ruling dismissing all charges and specifications with prejudice for violation of Article 10, UCMJ.[7] The military judge ordered appellee's release from pretrial confinement on 26 November 2003.[8]

## DISCUSSION

## A. Standard of Review

Under Article 62(b), UCMJ, 10 U.S.C. § 862, we are limited to review of "matters of law, notwithstanding [Article 66(c), UCMJ]." A military judge's conclusions as to whether the government used reasonable diligence to take immediate steps to try an accused is a question of law that is reviewed de novo.[9] We are required to give "substantial deference" to the military judge's findings of fact unless they are clearly erroneous.[10] When reviewing matters of law, the question is not whether we might disagree with the military judge's findings, but whether those findings are " 'fairly supported by the record.' "[11]

---

appeal, weighs against the government under an Article 10, UCMJ, analysis.

In *Barker v. Wingo,* the Supreme Court explained:

> "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." [*Beavers v. Haubert,*] 198 U.S. 77, 87, 25 S.Ct. 573, 49 L.Ed. 950 (1905). "In large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself." *United States v. Ewell,* 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

407 U.S. 514, 522 & n. 15, 92 S.Ct. 2182 (1972). Under R.C.M. 707, the government is generally accountable for delay caused by the reopening of an Article 32, UCMJ, investigation. *See United States v. King,* 30 M.J. 59, 65 (C.M.A.1990). "Any delay caused by a pretrial hearing conducted for the benefit of the accused . . . is excluded from the period for which the Government must account" under Article 10, UCMJ. *United States v. Rainey,* 2 M.J. 1080, 1082 (A.C.M.R.1976). We conclude after review of the entire record that the government diligently proceeded to take the defense-requested, corrective actions ordered by the military judge. The length and reasons for delay after 6 November 2003 do not militate toward dismissal of the charges. *See* discussion, *infra.* Having made the determination that the government acted diligently, it is unnecessary for us to decide whether the military judge correctly found that the government was negligent in the processing of the original Article 32, UCMJ, investigation and by including misleading and incomplete information in the staff judge advocate's pretrial advice.

7. Any period of delay resulting from this appeal are excluded from speedy trial calculations. *See*

UCMJ art. 62(c); *United States v. Loud Hawk,* 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (holding ninety-month delay caused by government appeal did not violate Constitutional right to speedy trial for respondent who was not under indictment nor subjected to official restraint, but holding Sixth Amendment speedy trial clock continues); *United States v. Cooper,* 58 M.J. 54, 61 (C.A.A.F.2003) ("Article 10 protections do not automatically cease upon arraignment."); *United States v. Miles,* 290 F.3d 1341, 1350 (11th Cir.2002) (holding delay from an interlocutory appeal is excluded time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(E)); *United States v. Gray,* 37 M.J. 1035, 1037 (A.C.M.R.1993) (discussing when trial starts under Article 10, UCMJ). We note that on 6 May 2004, appellate government counsel advised the court that no additional pleadings would be filed.

8. On 3 February 2004, appellee was found guilty of unrelated charges at a general court-martial. The convening authority approved only so much of the sentence as provides for a bad-conduct discharge, confinement for nine months and twenty-one days, forfeiture of all pay and allowances for ten months, and forfeiture of $767 pay per month for twenty-six months following the ten months of total forfeiture. The convening authority directed that appellee receive 186 days of confinement credit, which was for pretrial confinement served from 26 June 2003 to 26 November 2003 and from 4 January 2004 to 2 February 2004. *See United States v. Birge,* 52 M.J. 209, 212 (C.A.A.F.1999) (citing receipt of pretrial confinement credit as one of several reasons for no Article 10 violation).

9. *Cooper,* 58 M.J. at 59; *see United States v. Thompson,* 46 M.J. 472, 475 (C.A.A.F.1997).

10. *Cooper,* 58 M.J. at 58 (citing *United States v. Doty,* 51 M.J. 464, 465 (C.A.A.F.1999)).

11. *United States v. Burris,* 21 M.J. 140, 144 (C.M.A.1985) (quoting *Marshall v. Lonberger,* 459

## B. Speedy Trial under Article 10, UCMJ

Article 10, UCMJ, provides in pertinent part: "When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." Our superior court has rejected the notion of a "magic number" of days in applying Article 10. *United States v. McLaughlin,* 50 M.J. 217, 218 (C.A.A.F.1999) (citing *Kossman,* 38 M.J. at 261). Instead, a case-by-case analysis of pretrial processing is required:

> We see nothing in Article 10 that suggests that speedy-trial motions could not succeed where a period under 90—or 120—days is involved. At the same time, we recognize that there are many circumstances that justify even longer periods of delay. However, where it is established that the Government could readily have gone to trial much sooner than some arbitrarily selected time demarcation but negligently or spitefully chose not to, we think an Article 10 motion would lie.[12]

■ The test for assessing an alleged violation of Article 10 is whether the government acted with reasonable diligence in bringing the case to trial. *Kossman,* 38 M.J. at 262. "Nevertheless, it is still appropriate to consider [four] factors in resolving an Article 10 complaint—in the context of Article 10's immediate steps language and reason-

able diligence standard—as the Supreme Court determined were appropriate in reviewing a Sixth Amendment speedy trial claim." [13] These four factors are " '[l]ength of the delay, the reason for the delay, the defendant's assertion of his right [to a speedy trial], and prejudice to the defendant.' " [14] The Supreme Court discussed the interrelationship between these four factors, stating:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.[15]

■ "Because Article 10 provides a more stringent speedy trial requirement than the Sixth Amendment, Article 10 issues cannot be resolved simply by determining whether similar delays would have violated the Sixth Amendment under *Barker v. Wingo ....*" *Birge,* 52 M.J. at 212. Four inquiries are relevant: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." [16] Finally, "the entire period up to trying the accused will be reviewed for

U.S. 422, 432, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)).

**12.** *Kossman,* 38 M.J. at 261; *see also McLaughlin,* 50 M.J. at 218–19 (holding no Article 10, UCMJ, violation where sixty-nine days in pretrial confinement before preferral of charges and a total of ninety-five days in pretrial confinement before trial). In *United States v. Hatfield,* the court upheld the military judge's dismissal of "relatively simple, pre-investigated" charges arising from a bigamous marriage. 44 M.J. 22, 23–24 (C.A.A.F.1996). The court stated that "48 days, in which little or nothing was accomplished ... 'caused 106 days of confinement to unnecessarily accumulate before the accused c[ould] be brought to trial.' " *Id.* at 23 (alteration in original) (quoting military judge). The court also noted that the late appointment of defense counsel delayed the accused's initial attorney meeting by forty-five days. *See id.* at 24. In contrast to the "simple, pre-investigated"

charges in *Hatfield,* our superior court in *Birge* considered more complex charges, that is, conspiracy to distribute cocaine and two specifications of solicitation of others to possess cocaine. 52 M.J. at 210. In doing so, it held that pretrial confinement of 125 days with a defense continuance of 18 days did not violate Article 10, UCMJ. *See id.* at 210, 212.

**13.** *United States v. Smith,* 54 M.J. 783, 785 (A.F.Ct.Crim.App.2001) (internal quotation marks and citation omitted), *aff'd,* 56 M.J. 290 (C.A.A.F.2002).

**14.** *Birge,* 52 M.J. at 212 (quoting *Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. 2182 (1972)).

**15.** *Barker,* 407 U.S. at 533, 92 S.Ct. 2182.

**16.** *Doggett v. United States,* 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (citing *Barker,* 407 U.S. at 530, 92 S.Ct. 2182).

reasonable diligence on the part of the Government." *Cooper*, 58 M.J. at 60.

## C. Length and Reason for Delay

■ We agree with the military judge's finding that there is no evidence that the government acted in bad faith or with malice in the processing of appellee's case.[17] Contrary to the military judge, we hold that the government exercised reasonable diligence in the processing of appellee's case in the face of three obstacles: (1) operational requirements, (2) unavailability of critical witnesses, which made prosecution more complex, and (3) defense-requested delay.

### (1) Operational Requirements

From May through September 2003, thousands of soldiers from the 10th Mountain Division, including the division commander, staff judge advocate, several special and summary courts-martial convening authorities, potential Article 32, UCMJ, investigating officers, and several trial counsel from the Fort Drum Criminal Law Section (CLS) deployed from Fort Drum, New York, to Afghanistan and Uzbekistan for combat operations. In the midst of this major deployment, we find that it was more difficult to process appellee's case to trial.

We agree with the military judge's finding that the CLS was adequately staffed; a new chief of criminal law and two new trial had counsel arrived, and the CLS was augmented with reservists. But from May through September 2003, the CLS was disrupted by two trial counsel going TDY to Kosovo and by preparation of three trial counsel for overseas deployment. Also, one trial counsel and the chief of criminal law left Fort Drum on permanent change of station (PCS) moves.

Disruption of the SJA office due to operational requirements was particularly acute during the period from 2 July 2003 (the date appellee's charges were preferred) to 1 August 2003 (the beginning date of defense delay in the Article 32, UCMJ, investigation) by pre-deployment training, deployments, and PCS moves.[18] Although the number of prosecuted cases did not increase, unrebutted testimony indicates that there was a substantial increase in military justice activity. This personnel turbulence and increased military justice activity affected the processing of appellee's case, as lead trial counsel changed three times from July through August 2003.

■ While a "generalized claim of inadequate personnel and administrative convenience ... [are] insufficient to satisfy the government's burden of justification" for delay,[19] military exigencies may constitute a legitimate reason for delay under Article 10, UCMJ. *See Kossman*, 38 M.J. at 261–62. In *Kossman*, the court noted that "the logistical challenges of a world-wide system that is constantly expanding, contracting, or moving can at times be daunting" and that "operational necessities add a further layer of complexity."[20] Delay, for example, may be justified, in part, simply by operational demands of field exercises.[21] We hold that the prosecution is permitted a reasonable amount of additional time under Article 10 to process appellee's case because of extraordinary operational requirements and personnel turbulence resulting from deployment of significant portions of the division overseas.[22]

---

17. *See Birge*, 52 M.J. at 212 (citing absence of bad faith by the government as one of several reasons establishing no Article 10 violation).

18. As soldiers PCS into and out of military installations during summer rotations, there is often an absence of trial counsel (under lap) at each installation due to time lost from inprocessing, outprocessing, and leave en route to new assignments.

19. *United States v. Johnson*, 22 U.S.C.M.A. 524, 524, 48 C.M.R. 9, 9, 1973 WL 14890 (1973).

20. *Id.* at 261; *see Hatfield*, 44 M.J. at 23 ("Even ordinary judicial impediments, such as crowded dockets, unavailability of judges, and attorney caseloads, must be realistically balanced." (quoting *Kossman*, 38 M.J. at 261–62)).

21. *See United States v. Johnson*, 17 M.J. 255, 257, 261–62 (C.M.A.1984).

22. *See Plants*, 57 M.J. at 667 n. 5 (recognizing "the impact of military operations" on processing "in determining whether the government acted with reasonable diligence under Art. 10, UCMJ"); *United States v. Farmer*, 6 M.J. 897, 900 (A.C.M.R.1979) (stating that diligence may be shown "by demonstrating that the case involved extraordinary circumstances, such as military

### (2) Case Complexity and Witness Availability

Case complexity is a key component in the diligence determination. *See Barker*, 407 U.S. at 530–31, 92 S.Ct. 2182. A "serious, complex conspiracy charge" may warrant more delay than an "ordinary street crime." *Id.* at 531, 92 S.Ct. 2182. Here, the military judge concluded that appellee's case was not complicated because it did not involve controlled purchases of drugs, seized drugs, other physical evidence, urinalysis, audio or video surveillance, or expert witnesses. Actually, while the presence of such evidence potentially would have made appellee's case more complex to present at trial, it would not necessarily have delayed pretrial preparation. More abundant or more compelling evidence may have reduced the necessity for critical, but unavailable prosecution witnesses who were suspected of criminal offenses.

Witness unavailability also affected defense preparation for trial. The defense requested several witnesses at the Article 32, UCMJ, investigation and after arraignment who declined to be interviewed citing their right to be free from self-incrimination. On 7 November 2003, the defense requested immunity for seven witnesses allegedly involved in drug transactions with appellee.

Because the testimony of critical, legally unavailable witnesses could not be compelled without immunity, prosecution became a more complex enterprise. Appellee's case was potentially related to the investigation and disposition of nine other drug cases. The prosecutorial strategy was to prosecute appellee last because he had the greatest culpability.[23] The government deliberately delayed referral of appellee's case to trial because once referred, the government knew it would lose ability to control the order of prosecution.[24] As a case progresses from referral through arraignment to trial, "'the power of the military judge to process the case increases, and the power of the [Government] to affect the case decreases.'"[25]

The following chronology pertains to the preferral of charges, referral, arraignment, and disposition of seven drug cases related to appellee's case.[26]

| DATE | EVENT |
| --- | --- |
| 1 Aug. 2003 | Charges preferred against PVT LeBlanc |
| 18 Aug. 2003 | Charges preferred against PVT Jewels |
| 28 Aug. 2003 | PVT LeBlanc's charges referred to general court-martial |
| 3 Sept. 2003 | Charges preferred against PFC Cruz and PVT Gotham |
| 9 Sept. 2003 | PVT Morales, who was never charged, is discharged prior to expiration of term of service |
| 30 Sept. 2003 | PVT LeBlanc arraigned |
| 2 Oct. 2003 | PVT Gotham and PFC Cruz's charges referred to special court-martial |
| 6 Oct. 2003 | PVT LeBlanc pleaded guilty and sentenced |
| 9 Oct. 2003 | PFC Cruz arraigned [27] |

operational demands, a combat environment, a convoluted offense, or a complex investigation").

**23.** "Certainly it is reasonable for the Government to decide in which order defendants will be tried." *United States v. Edmond*, 41 M.J. 419, 422 (C.A.A.F.1995) (citing *United States v. Facey*, 26 M.J. 421 (C.M.A.1988), and *United States v. Grom*, 21 M.J. 53, 57 (C.M.A.1985)), *aff'd on other grounds*, 520 U.S. 651, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997). In *Edmond*, the accused was not in pretrial confinement and there was a twenty-four-day delay to "await trials of the co-accused to obtain further evidence for [the accused's] trial." *Id.* at 421–22.

**24.** Trial counsel stated that referral of appellee's case to trial was deliberately delayed because in an unrelated case, the military judge declined to grant a government-requested delay. Trial counsel asserted that the prosecution of a co-accused in the unrelated case was adversely affected.

**25.** *Cooper*, 58 M.J. at 60 (alteration in original) (quoting *Doty*, 51 M.J. at 465–66).

**26.** Two other persons (not including appellee), who were implicated in the drug investigation, are not listed in the following table.

**27.** Private First Class Cruz received a discharge in lieu of trial by court-martial on 17 December 2003.

| | |
|---|---|
| 15 Oct. 2003 | Charges preferred against PVT Butler and PVT Graham [28] |
| 17 Oct. 2003 | PVT Butler's charges referred to special court-martial |
| 30 Oct. 2003 | Appellee's defense counsel requests immunity for PVT Graham |
| 31 Oct. 2003 | PVT Jewel's charges referred to general court-martial |
| 5 Nov. 2003 | PVT Gotham arraigned |

The military judge concluded that prosecution was possible utilizing only PFC Cruz and PVT LeBlanc as witnesses.[29] He noted that the government could have granted immunity prior to prosecuting PFC Cruz and PVT LeBlanc, which would have made them immediately available to testify at appellee's court-martial.

Although the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, does not apply to the military,[30] the Court of Appeals for the Armed Forces has cited it for guidance concerning military speedy trial issues.[31] Section 3161(h)(3) permits a government delay upon the "unavailability" of "an essential witness." Under Second, Third, and Eighth Circuit precedent interpreting the Speedy Trial Act, charged accomplices, such as PVT LeBlanc, PFC Cruz, and PVT Gotham, are essential witnesses for purposes of 18 U.S.C. § 3161(h)(3).[32] In the Eighth Circuit, once an essential witness is indicted for the same offense about which he is to testify, that witness becomes unavailable. See Eagle Hawk, 815 F.2d. at 1219. Under Third Circuit precedent, however, an indicted accomplice is an available witness for Speedy Trial Act purposes because the government can grant use immunity. See Hamilton, 46 F.3d at 278–79.

With respect to exclusion of time to permit completion of prosecutions of essential witnesses, we take a middle ground between the Eighth and Third Circuits' approaches. Proceeding too rapidly without regard to culpability might compromise the prosecution of one or more of the co-accused, or result in an unwarranted windfall by forcing the government to provide an inappropriately generous pretrial agreement. Granting use immunity before prosecution greatly complicates the administration of a crowded docket by requiring untainted prosecutors to handle the subsequent trials.[33]

Charges were preferred against PVT LeBlanc on 1 August 2003 and against PVT Gotham and PFC Cruz on 3 September 2003. They became unavailable for purposes of Article 10, UCMJ, as witnesses in appellee's case on those dates. The government is required to diligently pursue their prosecution. When an accused is in pretrial confinement, the government must grant immunity to co-accused who are essential witnesses if the accused's trial will be *significantly* de-

**28.** The government indicated that deployment and unit reorganization caused preferral of charges to be delayed in the cases of PVTs Butler and Graham because of confusion as to who was their summary court-martial convening authority.

**29.** The government explained that even though the first prosecution witness list names only three co-accused, the others who were allegedly involved in drug activity were still potential witnesses, depending on what additional information they would provide after their trials were completed. A subsequent government witness list added two more uncharged accomplices. We also find that PVT Gotham is an essential witness. Private Gotham's CID statement describes six separate times he purchased cocaine from appellee.

**30.** See United States v. Beach, 23 U.S.C.M.A. 480, 482, 50 C.M.R. 560, 562, (1975).

**31.** See, e.g., Cooper, 58 M.J. at 57, 60; Birge, 52 M.J. at 211; Edmond, 41 M.J. at 421.

**32.** See United States v. Marrero, 705 F.2d 652, 653–57 (2d Cir.1983); United States v. Hamilton, 46 F.3d 271, 276–77 (3rd Cir.1995); United States v. Eagle Hawk, 815 F.2d 1213, 1214–15, 1218 (8th Cir.1987); cf. United States v. Simmons, 22 U.S.C.M.A. 603, 48 C.M.R. 227, 1974 WL 13803 (1974) (per curiam) (finding three-month delay to complete prosecution of non-essential witness on related charges was unjustified under Article 10, UCMJ).

**33.** See, e.g., United States v. Mapes, 59 M.J. 60, 65–72 (C.A.A.F.2003) (reversing findings and sentence, and highlighting the difficulty of investigating and prosecuting co-accused after a grant of immunity).

layed by their unavailability, even though subsequent prosecution of those co-accused will be much more difficult.

■ The decision to prosecute appellee last was reasonable. The prosecution is permitted additional, but not unlimited, extra time under Article 10, UCMJ, to prosecute under such circumstances. In *Barker v. Wingo*, the Supreme Court recognized that prosecutorial decisions about the order in which to try multiple defendants may provide reasonable grounds for delay. *See* 407 U.S. at 534, 92 S.Ct. 2182. In *Barker*, the police arrested two men, Barker and Manning, for the murder of an elderly couple. *Id.* at 516, 92 S.Ct. 2182. Prosecutors decided to try Manning first because they believed they had a stronger case against him. *Id.* They also reasoned that it would be better to try Manning first because, after his trial, they could require Manning's testimony against Barker. *Id.* For a variety of reasons, it ultimately took the government more than four years to try Manning, ten months of which Barker spent in jail. *See id.* at 516–17, 92 S.Ct. 2182. The Supreme Court found most of the delay in Manning's case unjustified, but acknowledged that "some delay would have been permissible under ordinary circumstances, so that Manning could be utilized as a witness in Barker's trial." *Id.* at 534, 92 S.Ct. 2182.

In appellee's case, in the sixty-two days between completion of the Article 32 investigating officer's report on 19 August 2003 and the start of defense delay on 20 October 2003 the government completed numerous actions involving six co-accused and promptly obtained one guilty plea. These actions indi-

cate reasonable diligence, not unreasonable delay.[34]

### (3) Defense Delay

Two delays are attributable to the defense. First, the defense requested and the Article 32 investigating officer approved a delay in appellee's hearing from 1 to 11 August 2003, a period of ten days. Second, the defense requested a delay in trial on the merits from the government's ready date of 20 October 2003. The defense delay extends to 14 November 2003,[35] a period of twenty-five days.

At the Article 39(a), UCMJ, session on 16 October 2003, trial counsel announced that he would be ready for trial on 20 October 2003;[36] appellee's trial defense counsel stated he would not be ready for trial until 12 November 2003 due to scheduling conflicts. Trial defense counsel stated that further delay might be necessary because appellee was contemplating hiring civilian counsel.

At the next Article 39(a), UCMJ, session on 6 November 2003, appellee told the military judge that he had hired civilian counsel, and then appellee personally waived civilian counsel's presence during the motions session. Appellee's trial defense counsel informed the court that civilian counsel would not be available until after 27 November 2003 because of other cases and commitments outside New York State.

■ "Where the defense affirmatively seeks a delay or where it consents to a delay or where it requests government action which necessarily requires reasonable time for accomplishment, then the defense waives government speedy-trial accountability for those periods of time."[37] Of the 141 days in

---

**34.** *See United States v. Johnson,* 3 M.J. 143, 149 (C.M.A.1977) (holding that delay of "relatively short duration" is permissible to complete prosecution of essential witness); *United States v. Gambino,* 784 F.Supp. 129, 141 (S.D.N.Y.1992) (recognizing that conspiracies involving multiple defendants take longer to bring to trial).

**35.** The period after 14 November 2003 is attributed to the government interlocutory appeal under Article 62, UCMJ.

**36.** Trial counsel stated that with "Homeric efforts" he could meet his suggested 20 October 2003 trial date. It is apparent that to be ready for trial the government could have granted im-

munity to some of the accomplices, who admitted in statements that they bought cocaine from appellee, but this course of action would have had significant drawbacks. *See* note 34, *supra.* Contrary to the military judge, we accept trial counsel's ready date as realistic and made in good faith.

**37.** *King,* 30 M.J. at 66 n. 7 (holding 162 of 236 days in pretrial confinement attributable to defense); *see United States v. Montanino,* 40 M.J. 364, 366 (C.M.A.1994) (holding three-month delay attributable to defense where delay occasioned by trial defense counsel's overseas deployment and Specialist Montanino voluntarily agreed to delay).

pretrial confinement up to the date the government's appeal was filed, we attribute 35 days to the defense and 106 days to the government.

## D. Defense Request for Speedy Trial

At the Article 39(a), UCMJ, session on 16 October 2003, appellee's trial defense counsel told the military judge that the defense was *not requesting* immediate trial. In a motion to dismiss the charges, dated 28 October 2003, the defense requested a speedy trial. At the Article 39(a) session on 6 November 2003, the defense requested a delay in trial on the merits until 27 November 2003 to accommodate civilian defense counsel's schedule.

■ The Supreme Court has emphasized that "failure to assert the right [to a speedy trial] will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182. "An accused cannot be responsible for or agreeable to delay and then turn around and demand dismissal for that same delay." *King*, 30 M.J. at 66. We conclude that the defense request for immediate trial in the midst of a request for delay to accommodate civilian counsel's schedule does not constitute a bona fide request for immediate trial.

## E. Defense Prejudice

We agree with appellate defense counsel and the military judge that appellee was prejudiced by the loss of a potentially exculpatory witness, PVT Morales. The basis of Specifications 6 and 15 of Charge III was that on 1 and 15 June 2003, respectively, PVT Morales allegedly purchased cocaine from appellee.

On 26 June 2003, PVT Morales made a short sworn statement admitting that he bought marijuana on multiple occasions in Watertown, New York, from someone he did not know and then smoked the marijuana alone. At one point, the investigator asked, "Have you used any other controlled substances?" Private Morales answered, "No." The investigator did not ask PVT Morales whether he purchased or received cocaine from appellee or anyone else.

On 28 July 2003, the defense requested PVT Morales as a witness at appellee's Article 32, UCMJ, investigation; PVT Morales invoked his right to remain silent at the hearing. The command offered to delay PVT Morales' pending administrative discharge. The CLS, however, never checked whether the defense still wanted PVT Morales as a witness. Consequently, the CLS did not inform the command that PVT Morales was needed for appellee's trial. Private Morales was discharged on 9 September 2003.

On 30 October 2003, the defense requested former PVT, now Mr. Morales, as a witness for trial. On 6 November 2003, trial defense counsel indicated that they had no contact with Mr. Morales. The government provided a telephone number to the defense to contact Mr. Morales. A person who identified himself as Mr. Morales' brother informed trial defense counsel that Mr. Morales did not reside at that location, and he declined to disclose Mr. Morales' location. Counsel did not describe any other efforts to locate Mr. Morales. On 30 November 2003, the military judge noted the absence of evidence that Mr. Morales had been located and found that "the potential loss of the former PVT Morales [as a witness] had not been ameliorated."

Assuming Mr. Morales' testimony will be the same as his sworn statement, he will deny cocaine use. This proposed testimony, however, does not directly contradict the government's allegation that Mr. Morales *bought* cocaine from appellee. Trial and defense counsel never asserted that they had interviewed PVT Morales; now Mr. Morales is apparently unavailable. It is not possible to clarify whether his testimony would be material.

In our prejudice evaluation, we find that government neglect caused Mr. Morales, a potentially exculpatory witness, to become unavailable.[38] We also conclude that the

---

38. *See United States v. McElhaney*, 54 M.J. 120, 127 (C.A.A.F.2000) (listing factors to determine if production of witness is necessary); *United States v. Montgomery*, 56 M.J. 660, 666 (Army

government's effort to locate Mr. Morales was inadequate. In the context of the Constitutional right to a speedy trial, the Supreme Court has reasoned that "the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious." *Barker,* 407 U.S. at 532, 92 S.Ct. 2182.

## DECISION

The military judge's ruling dismissing the Charges and Specifications with prejudice, for violation of Article 10, UCMJ, is vacated. If the government fails to produce PVT Mor-

ales as a witness, then the military judge must dismiss Specifications 6 and 15 of Charge III with prejudice. The record of trial will be returned to the military judge for action not inconsistent with this opinion.

Senior Judge MERCK and Judge SCHENCK concur.

---

Ct.Crim.App.2001) (discussing whether a witness is necessary and material).