# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

## Christopher S. COOLEY
### Fireman Apprentice (E-2), U.S. Coast Guard

### CGCMG 0299
### Docket No. 1389

### 24 December 2014

General Court-Martial convened by Commander, Seventeenth Coast Guard District.  Tried at Juneau, Alaska, on 10 September (by videoteleconference) and 4 October 2013.

| | |
|---|---|
| Military Judge: | CAPT Christine N. Cutter, USCG |
| | CDR Lewis T. Booker, JAGC, USN |
| Trial Counsel: | LCDR Stanley P. Fields, USCG |
| Assistant Trial Counsel: | LCDR John D. Cashman, USCG |
| Civilian Defense Counsel: | Mr. Stephen H. Carpenter, Jr., Esq. |
| Military Defense Counsel: | LT Michael Hanzel, JAGC, USN |
| Assistant Defense Counsel: | CDR Matthew J. Fay, USCG |
| Appellate Defense Counsel: | LT Cara J. Condit, USCG |
| | LT Philip A. Jones, USCGR |
| Appellate Government Counsel: | LCDR Amanda M. Lee, USCG |
| | LT Daniel Velez, USCGR |

### BEFORE
### McCLELLAND, DUIGNAN & KOVAC
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial, military judge alone.  Pursuant to his conditional pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of attempting a lewd act with a child of more than 12 years but less than 16 years, and two specifications of attempting to wrongfully commit indecent conduct, all in violation of Article 80, Uniform Code of Military Justice (UCMJ); one specification of failing to obey an order, in violation of Article 92, UCMJ; and one specification of wrongfully and knowingly possessing apparent child pornography, to the prejudice of good order and

discipline in the armed forces or to the discredit of the armed forces, in violation of Article 134, UCMJ. The military judge sentenced Appellant to confinement for seven years, forfeiture of all pay and allowances, reduction to E-1, and a bad-conduct discharge. In accordance with the pretrial agreement, the Convening Authority approved the sentence and suspended all confinement in excess of fifty months.

Before this court, Appellant has assigned the following errors:

I. The Government violated Appellant's right to a speedy trial under Article 10, UCMJ.

II. The Military Judge erred by not dismissing the first court-martial with prejudice.

III. Two specifications, for which the Government had "substantial information" of misconduct at least six months prior to Appellant's arraignment, should be dismissed as violations of RCM 707.

IV. The Military Judge erred by not awarding Appellant additional credit for pretrial restriction tantamount to confinement in violation of Article 13, UCMJ.

V. The Appellant's Eighth Amendment Right to be free from inhumane conditions during confinement was violated.

VI. The Appellant's pretrial confinement was more rigorous than necessary to ensure his presence at trial and in violation of Article 13, UCMJ.

VII. The Article 134 Specification did not provide the Appellant with adequate notice.

VIII. The Military Judge erred by allowing impact statements from three witnesses that were not directly related to Appellant's offense and were unfairly prejudicial.

IX. The Appellant's guilty plea to Charge II, Specification 2 is improvident because Appellant was asked to contact K.G. via Facebook by K.G.'s mother.

X. S/A Renkes committed misconduct by repeatedly badgering M.P. to testify against Appellant after M.P. had refused to do so.

XI. The Appellant's confession was unlawfully obtained after Appellant's request for an attorney.

We discuss the first and third issues. We dismiss all charges and specifications, some for lack of speedy trial under Article 10, and others for lack of speedy trial under R.C.M. 707.

## Summary of facts

Appellant was interviewed by law enforcement officials in 20 July 2012. Based on his confession during the interview that he had solicited sexually explicit photographs from minor children, he was placed in pretrial confinement. On 27 July, he was released from pretrial confinement after a hearing before an Initial Review Officer, and immediately placed under pretrial restriction at Base Seattle. On 22 August, he was released from restriction and subjected to conditions on his liberty. In the memorandum of that date setting forth the conditions on liberty, among other things he was directed "to refrain from having any contact and communication whatsoever with any minor (defined as any person below the age of 17)."

Based on information that he had communicated with minor children in violation of the 22 August memorandum, Appellant was again placed in pretrial confinement on 20 December 2012.

Charges were preferred on 19 February 2013. After an Article 32 investigation and Article 34 advice, the charges were referred to court-martial on 18 March 2013, the Government attempted to arraign Appellant on 3 April 2013, but did not serve him with the charges until that date, and he declined to waive his right to a five-day period before an Article 39(a) session could begin, in accordance with Article 35. On 23 May 2013, after an Article 39(a) session on 14 May at which Appellant was arraigned and motions were heard ("first trial"), all charges were dismissed without prejudice for a violation of Rule for Courts-Martial (R.C.M.) 707, Manual for Courts-Martial, United States (2012 ed.). Identical charges were re-preferred the same day, but they were later dismissed and new charges were preferred on 14 June 2013, comprising the original charges and specifications along with two new specifications. These charges and an Additional Charge were referred to trial on 7 August 2013, after an Article 32 investigation on the new specifications.[1] Appellant was arraigned on 10 September and the case went to trial on 4 October 2013 (collectively, "second trial," which is the subject of this appeal).

---

[1] The Additional Charge was preferred upon the recommendation of the Article 32 officer. It was later dismissed without prejudice for a violation of R.C.M. 707, because it was based on evidence the Government possessed at the time Appellant was confined. (Ruling on Defense Motions to Dismiss Certain Charges and Specifications for Violation RCM 707 (20 September 2013), attached to the record on appeal by 13 March 2014 order of this Court upon motion of the Government.)

**Speedy trial under Article 10**

Appellant's conditional pleas preserved this issue for appeal, as well as others.[2] Appellant asserts that he was denied his Article 10 right to a speedy trial, having been confined for 289 days, beginning on 20 December 2012, before being brought to the second trial.[3]

Whether Appellant was denied his right to a speedy trial under Article 10, UCMJ, is a question of law that we review *de novo,* "giving substantial deference to a military judge's findings of fact . . . ." *United States v. Mizgala*, 61 M.J. 122, 127, (C.A.A.F. 2005) (citing *United States v. Cooper*, 58 M.J. 54, 57-59 (C.A.A.F. 2003)). Notwithstanding the *de novo* standard, some degree of deference may be accorded the military judge's conclusions since the military judge is likely to be sensitive to the realities of military practice. *See United States v. Hatfield*, 44 M.J. 22, 23 (C.A.A.F. 1996) (quoting *United States v. Kossman*, 38 M.J. 258, 261-62 (C.M.A. 1993)).

Article 10 does not require "constant motion, but reasonable diligence in bringing the charges to trial." *United States v. Wilson*, 72 M.J. 347, 351 (C.A.A.F. 2013) (quoting *Mizgala*, 61 M.J. at 127, internal quotation marks omitted); *United States v. Kossman*, 38 M.J. 258, 262 (C.M.A. 1993) (quoting *United States v. Tibbs*, 15 USCMA 350, 353, 35 C.M.R. 322, 325 (1965). Although Article 10 imposes a more stringent speedy trial standard than the Sixth Amendment, "the factors from *Barker v. Wingo*, 407 U.S. 514 (1972), are an apt structure for examining the facts and circumstances surrounding an alleged Article 10 violation." *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007) (quoting *Mizgala*, 61 M.J. at 127); *United States v. Birge*, 52 M.J. 209, 212 (C.A.A.F. 1999). The *Barker* factors are "Length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Birge*, 52 M.J. at 212 (quoting *Barker*, 407 U.S. at 530).

---

[2] A litigated speedy trial motion, as occurred in this case, is not waived even by an unconditional guilty plea. *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005).

[3] Appellant claims that he spent 440 days under various forms of restraint, "much of which included confinement and restraint tantamount to confinement." (Assignments of Error and Brief at 13.) His initial confinement for a week in July 2012 does not add significantly to the total confinement, in our view, and we see no need to determine whether the twenty-six days of restriction ending in August 2012 were tantamount to confinement.

Appellant calls his 289 days of continuous pretrial confinement from 20 December 2012 to 4 October 2013, the date trial began, facially unreasonable. He goes on to point out that he demanded speedy trial numerous times, beginning on 20 November 2012, before the 20 December inception of the continuous pretrial confinement. He also argues that the Government failed to justify the delay in bringing him to trial and that he was prejudiced in several specific ways.

At trial, Appellant moved to dismiss all charges under Article 10; the written motion is Appellate Exhibit XXI. He also moved to dismiss, under R.C.M. 707, the Additional Charge and the two specifications that were added on the charge sheet dated 14 June 2013; the written motion is Appellate Exhibit XVII. Finally, he moved to reconsider the characterization of the dismissal of all charges at the first trial, which was characterized as being without prejudice; the written motion is Appellate Exhibit XIX. On the latter issue, the military judge adhered to the ruling from the first trial, and that ruling is the subject of Assignment of Error II. For the purpose of the instant issue, we will assume that that ruling was not erroneous. Thus, we will focus on the period beginning 23 May 2013, when the charges were dismissed without prejudice at the first trial.

The military judge made extensive findings of fact and discussed the circumstances at some length before denying the motion to dismiss. (Ruling on Motion to Dismiss under Article 10 (26 September 2013), attached to the record on appeal by 13 March 2014 order of this Court upon motion of the Government (26 September Ruling).) We find no fault with the military judge's findings of fact, which are generally supported by evidence.[4] However, we do not so readily agree with the military judge as to her ultimate conclusions. It is clear that a significant part of the delay between the dismissal without prejudice at the first trial and commencement of the second trial is attributable to the fact that additional specifications were preferred and referred to trial. The question of whether it was permissible to delay Appellant's trial in order to

---

[4] The supporting evidence is found in the testimony admitted on Appellant's motion to dismiss (R. September 10 at 185-205), and in the documents attached to Appellate Exhibits XVII, XVIII, XIX, and XXI, which were identified in the respective appellate exhibits as evidence without objection. These appellate exhibits include the Government Response to Defense Motions to Dismiss under R.C.M. 707 and Article 10 (Appellate Ex. XVIII), as well as the three defense motions described earlier.

add new specifications while he remained in pretrial confinement places a spotlight on the second *Barker* factor, the reason for the delay.

The military judge found "that the Government engaged in a good faith attempt in the newly referred charges to join all known offenses at one hearing." (26 September Ruling at 9.) This finding is not clearly erroneous. It surely refers to the principle that judicial economy "ordinarily" calls for all known charges to be referred to a single court-martial. R.C.M. 601(e)(2) Discussion; R.C.M. 401(c) Discussion. To be sure, withdrawal and dismissal of charges followed by re-preferral and re-referral of the dismissed charges along with new charges, for the purpose of trying all charges at a single trial, is not improper in the absence of prejudice. *United States v. Leahr*, 73 M.J. 364, 370 (C.A.A.F. 2014). However, in *Leahr*, the accused was not in pretrial confinement. *Id.*

In this case, in our view, the fact that Appellant had already been in pretrial confinement for a lengthy period –155 days on the date the old charges were dismissed – took the case out of the "ordinary" category; judicial economy should have given way to the speedy trial mandate of Article 10. We do not see judicial economy, or any other reason, as justifying a significant pause to prefer additional specifications and fulfill Article 32 requirements with respect to those additional specifications. We do not consider the pause excusable merely because it resulted from a good-faith attempt to join all known offenses at one hearing.

Our view is supported by *United States v. Ward*, 23 USCMA 391, 50 C.M.R. 273, 1 M.J. 21 (1975). In that case, the accused was placed in pretrial confinement on March 30, 1973, and brought to trial on July 31. In the interim, on June 26 the trial counsel received a case file from the district attorney concerning an unrelated offense for which the accused had been arrested by civilian authorities on March 2. Charges based on that case file were added to the charges against the accused. The Court of Military Review concluded that delay from June 25 to July 31 was excludable from Government accountability, and held that the accused had not been denied a speedy trial. The Court of Military Appeals noted the principle that all known offenses should be tried at a single trial, but pointed out that it was "only a statement of policy; the speedy disposition of charges for which an accused is confined is a command of Congress." *Id.* at 394,

276, 24.  The court went on, "We conclude, therefore, that the intercession of a new charge does not automatically authorize deferment of the trial of the original charges for which the accused had been confined."

The military judge also called attention to the demands of the investigation, which still continued at the date of the Article 39(a) session.  (26 September Ruling at 9; *see* R. September 10 at 192-93.)  However, presumably the Government was ready to go to trial on the scheduled date of the first trial, so this does not constitute a valid reason for delay past the dismissal at the first trial.  If further investigation warranted new charges against Appellant, this could have occasioned another trial.

In short, the reason for the delay weighs significantly against the Government.

We back up to the first *Barker* factor, the length of the delay.  The period Appellant was confined before trial, 289 days, is over nine months and more than twice the 120-day benchmark set by R.C.M. 707 in the less rigorous context of no pretrial confinement.  It is certainly long enough to warrant concern.  *See Wilson*, 72 M.J. at 351-52 (174 days); *United States v. Thompson*, 68 M.J. 308, 312 (C.A.A.F. 2010) (145 days); *Cossio*, 64 M.J. at 257 (117 days).  We will look more closely at the period following dismissal at the first trial.

As already noted, the charges were dismissed without prejudice at the first trial on 23 May 2013, and identical charges were preferred on that date.  A new charge sheet that included two new specifications was preferred on 14 June 2013, replacing the 23 May charge sheet, which was dismissed without prejudice.  Judging from the eventual referral of charges, which took place on 7 August, seven days after the Article 32 investigation report, the 23 May charge sheet probably could have been referred to trial by the end of May, if not sooner, without the new specifications.  In that event, even if trial had been scheduled at the same speed as actually occurred, where an Article 39(a) session for motions took place on 10 September and the court convened for trial on 4 October, Appellant would have been tried by the end of July, more than two months sooner than what eventuated.

We note that the first trial was scheduled to begin on 23 July 2013, according to a Government filing, although there is no evidence to support that schedule.[5]  (Appellate Ex. XVIII at 5.)  This followed a defense proposal for trial to begin on 5 June.  (Appellate Ex. XVIII Encl. 14.)  The schedule was derailed by dismissal of the charges, but the dates might well have remained open on the calendars of those involved.  Another view of a possible trial date can be found in a 6 June 2013 defense proposal, in which the defense proposed an Article 39(a) session for motions to be held on 21 June followed by trial a week later.  (Appellate Ex. XIX Encl. 3.)

We conclude that Appellant waited for trial after dismissal at the first trial for at least two months longer, and perhaps as much as three months longer, than would have been the case if there had been no pause to add specifications.  We consider this additional delay significant; it weighs significantly against the Government.

The third *Barker* factor is Appellant's assertion of his right to speedy trial.  Appellant demanded speedy trial fourteen days after dismissal at the first trial, having demanded it several times while awaiting the first trial, and having moved to dismiss for lack of speedy trial at the first trial.  After the new charges were referred to court-martial, upon docketing on 9 August 2013, the defense took exception to the initial trial date of 21 October and expressed the speedy trial concern.  (Appellate Ex. XXI Encl. 14.)  The defense continued in that vein, demanding speedy trial on 19 August as acknowledged by the military judge, and on 27 August seeking an earlier trial date than 8 October 2013.  (Appellate Ex. XXI Encl. 15.)[6]  As the military judge found, "Clearly the accused did make demands for speedy trial.  This factor weighs heavily in his favor."  (26 September Ruling at 9.)

The Government attempts to cast aspersions on Appellant's demands for speedy trial by asserting that "some of the defense tactics appearing to delay the proceedings while at the same time requesting a speedy trial raises a question of whether these requests were meant to solidify and perfect appellate review of the Article 10 issue rather than a plea for immediate relief."

---

[5] The evidence of the 23 July scheduled trial date would surely be at hand if the record of the first trial had been included in the ancillary documents for this case, as should have been done.  R.C.M. 1103(b)(3)(A)(iii).

[6] Further hints of Appellant's quest for a speedy trial are found in the summary of pretrial conferences recited during the initial Article 39(a) session.  (R. September 10 at 15-18.)  However, a scheduling order mentioned at that time is not part of the record.

(Answer and Brief at 17.) Nothing more specific is said. If this is a reference to the fact that Appellant declined to waive his right to five days between service of charges and the initial Article 39(a) session, we are wholly unsympathetic; the Government had no excuse for failing to serve the charges earlier. Appellant's repeated assertion of his right to speedy trial weighs heavily in his favor, without qualification.

The final *Barker* factor is prejudice. To start, Appellant was confined; each day of confinement before trial is clear prejudice. The military judge makes several references to the fact that Appellant was placed in pretrial confinement based on his own misconduct. Most notably, she states, "The accused is in pretrial confinement based on his own misconduct when lesser forms of restraint proved inadequate. Consequently there is not prejudice to the accused." (26 September Ruling at 8.) This is tantamount to a ruling that confinement imposed because a new offense was committed after notification to an accused of investigation of earlier offenses is not prejudice, or, more simply, confinement that is highly justified is not prejudice. We reject this notion. Pretrial confinement is prejudice no matter how solidly based.

Appellant asserts other specific items of prejudice, some of which occurred well before the dismissal at the first trial. We see no need to address these specific items of alleged prejudice; the prejudice of confinement itself weighs significantly against the Government.

As noted above, the question is whether the Government displayed reasonable diligence in proceeding toward trial. We are to look at the proceeding as a whole. *Thompson*, 68 M.J. at 313; *Mizgala*, 61 M.J. at 129. Despite what might be regarded as reasonable diligence up to the point of dismissal at the first trial, the Government's decision to pause so as to add new specifications to the case – resulting in at least two extra months before trial commenced – does not, in our view, constitute reasonable diligence. This was not merely a short period of inactivity, it was an intentional diversion to new activity that was in no way required for the case to go forward, displaying a disregard for the speedy trial rights of the confined Appellant.

We hold that the military judge erred in denying the motion to dismiss under Article 10.

Consideration of this issue is not complete until we address exactly what should have been dismissed. Arguably, the two specifications added on 14 June 2013 were not part of the reason Appellant was confined in December 2012 and therefore should not be included in the charges and specifications that should have been dismissed. *See United States v. Robinson*, 28 M.J. 481, 483 (C.M.A. 1989; *United States v. Talavera*, 8 M.J. 14 (C.M.A. 1979) ("as regards speedy disposition of a charge, where there are multiple specifications, the proceedings as to each must be considered separately"). These two specifications are the subject of Assignment of Error III. They will be addressed next, in conjunction with that issue.

### Speedy trial for two added specifications

Appellant's conditional pleas preserved the speedy trial issue under R.C.M. 707, too, for appeal. Appellant claims that the military judge erred in denying his motion to dismiss the two specifications that were added on 14 June 2013, because the Government possessed substantial information on which the specifications were based much earlier. Also, the two specifications warrant analysis under Article 10, separate from the analysis of the original charges in the preceding section.[7]

As under Article 10, whether Appellant was denied his right to a speedy trial under R.C.M. 707 is a question of law reviewed *de novo*. *United States v. Doty*, 51 M.J. 464, 465 (C.A.A.F. 1993). The burden of persuasion for a motion under R.C.M. 707 is on the Government. R.C.M. 905(c)(2)(B). When an accused is in pretrial confinement, and additional charges are preferred other than those for which he was confined, the Government's accountability for the additional charges for purposes of Article 10 "should commence when the Government had in its possession substantial information on which to base the preference of [those additional] charges." *United States v. Johnson*, 23 USCMA 397, 399, 50 C.M.R. 279, 281, 1 M.J. 101, 103 (1975) (quoting *United States v. Johnson*, 23 USCMA 91, 93, 48 C.M.R. 599, 601 (1974)).

---

[7] One of the two specifications, Charge II Specification 3, was withdrawn and dismissed without prejudice by the Convening Authority after Appellant pleaded not guilty to it, pursuant to the pretrial agreement. We deem it appropriate for us to consider it, since there is nothing in the record so far to prevent its being re-preferred in the future.

As already mentioned, Appellant moved to dismiss, under R.C.M. 707, the two specifications that were added on 14 June 2013; the written motion is Appellate Exhibit XVII. The Government responded in Appellate Exhibit XVIII. The military judge denied that motion to dismiss. (Ruling on Defense Motions to Dismiss Certain Charges and Specifications for Violation RCM 707 (20 September 2013), attached to the record on appeal by 13 March 2014 order of this Court upon motion of the Government (20 September Ruling).) In doing so, the military judge stated that "the proper start of the RCM 707 clock for these charges is in accordance with RCM 707(a)(1) the preferral of charges . . ." (20 September Ruling at 3-4.) This was error. As stated above, the clock started when the Government had in its possession substantial information on which to base the preference (preferral) of the added charges.

To support her statement, the military judge quoted *United States v. Robinson*, 26 M.J. 954, 956 (A.C.M.R. 1988), *affirmed*, 28 M.J. 481 (C.M.A. 1989) ("we hold that, in order to commence the speedy trial clock, the imposition of restraint . . . must be 'in connection with' the specification being challenged.").) However, this statement does not necessarily determine the starting point of the speedy trial clock for such a specification in every case. Later in *Robinson*, the court quotes the formulation from *United States v. Johnson*, 23 USCMA 91, 93, 48 C.M.R. 599, 601 (1974): "the Government had in its possession substantial information on which to base preference of charges," and affirms, "In a case where an accused is confined, the possession of such information is sufficient to start the speedy trial clock on additional offenses." *Robinson*, 26 M.J. at 957. The court goes on to say, "In light of the significant distinction between confinement and other restraints on liberty, we do not believe that the *Johnson* rule is appropriate where an accused is under pretrial restraint not tantamount to confinement. Here, for example, the appellant was under a moral rather than physical restraint . . ." *Id.* Since the appellant in *Robinson* was **not** in pretrial confinement, the case does not support a starting point of the preferral date for the speedy trial clock for the added specifications in our case, where Appellant **was** in pretrial confinement.

Notwithstanding the military judge's legal error concerning the starting point for the speedy trial clock, the military judge's findings of fact in the 20 September ruling are generally

supported by evidence. They serve as our basis to determine the real starting point of the speedy trial clock for each of the added specifications.

Charge II Specification 3 was based on a letter that was seized in February 2013; after investigation to ascertain the identity, age and whereabouts of the addressee, a search authorization to open the letter was sought on 6 June 2013. (20 September Ruling at 1.)

Those and other relevant facts are supported by a Coast Guard Investigative Service (CGIS) special agent's testimony at the Article 32 investigation and at trial. According to the special agent, the letter, sent by Appellant to an individual at the Grizzly Youth Academy and postmarked 11 December 2012, had been returned to the barracks at Base Seattle because the addressee was no longer at the Grizzly Youth Academy. The letter subsequently came into the special agent's possession, who determined in February 2013 that the addressee was sixteen years old when the letter was sent. The special agent sought to contact the addressee, which required further investigation to find him, after which the search authorization was obtained and the letter was opened. (Appellate Ex. XVIII Encl 21 at 10-13; R. September 10 at 185-87, 200-01.)

Charge II Specification 3, which alleges violation of an order by communicating with a sixteen-year-old by sending correspondence via U.S. Postal Service, does not depend on the contents of the letter. Although the letter was not opened until June 2013, substantial information on which to base the preferral of that specification was held by the Government when the special agent learned the age of the addressee in February 2013, in our view. Accordingly, the speedy trial clock for that specification began on or before 28 February, and the 10 September arraignment was well beyond the 120 days prescribed by R.C.M. 707.[8] We believe the military judge, applying the correct legal principle (substantial information on which to base preferral), should have granted the motion to dismiss this specification.

Charge IV Specification 2 was based on images of children among hundreds of images identified by CGIS Electronic Crimes Section (ECS) during forensic analysis of electronic media

---

[8] No approved delay is identified in the 20 September ruling, the 26 September ruling, or any of the parties' filings.

seized from Appellant. The final report on the forensic analysis was provided to the special agent working on Appellant's case in March 2013. (20 September Ruling at 2.)

Those and other relevant facts are supported by the CGIS agent's testimony. According to the special agent, he received the ECS report on 5 March, containing hundreds of images. The report identified two images as child pornography. The special agent conducted further investigation, including screening images for indicators consistent with child pornography and attempting to determine if any children depicted are actual victims. As of July 2013, when he testified at the Article 32 investigation, the special agent had identified three images – the initial two and one more – that he believed to be child pornography. He found no matches with the National Center for Missing or Exploited Children, and no images matched known victims in Appellant's case. (Appellate Ex. XVIII Encl 21 at 11-12; R. September 10 at 188-92, 201-02.)

During the argument at the Article 39(a) session on the R.C.M. 707 motion, trial counsel stated, "[I]t wasn't until after the 23rd of May [the date charges were dismissed at the first trial] that these images were confirmed as child pornography for charging." (R. September 10 at 139.) If that is so, then it may be fair to say that substantial information on which to base the preferral of Charge IV Specification 2 was not held by the Government until after 23 May.[9] Our difficulty is that there is no evidence to support trial counsel's statement. The only date for which we have evidence is March: after the special agent received the report on 5 March, he conducted further investigation. Such investigation could have been completed later in March, for all the evidence shows, giving the Government substantial information on which to base preferral of the specification before the end of March. If the speedy trial clock started in March, or even April, arraignment occurred on this specification, too, beyond the 120 days prescribed by R.C.M. 707.

Given the Government's burden to show compliance with R.C.M. 707, and the absence of evidence showing that the speedy trial clock started later than March 2013, the military judge,

---

[9] This assumes that the two images identified by the ECS as child pornography required additional investigation before it could be said that the Government had substantial information on which to base preferral. It is not clear that this is a good assumption. However, the charges had been preferred on 19 February; it seems unlikely that a specification like Charge IV Specification 2 would have been brought to trial in the absence of the dismissal without prejudice of the 19 February charges.

applying the correct legal principle for the start of the speedy trial clock, should have granted the motion to dismiss Charge IV Specification 2.

After consideration of the factors set forth in R.C.M. 707(d)(1), we conclude that both Charge II Specification 3 and Charge IV Specification 2 should be dismissed, without prejudice to the Government's right to reinstate proceedings against Appellant.

We also consider whether the two specifications, or either of them, should be dismissed under Article 10; if so, the dismissal would be with prejudice. As discussed in an earlier part of this opinion, the military judge denied a motion to dismiss all charges under Article 10, but we found error in that ruling as to all the other specifications. The military judge's ruling as to the two specifications now being discussed was not infected by that error, in our view, since the two specifications were the occasion for the delay in bringing the other specifications to trial but were not themselves delayed.

The military judge pointed to the nature of the case, the complexity of the issues, the geographic distances involved, the electronic media analysis involved, and the fact that the CGIS investigation remained open, generating the additional charges, as reasons for the delay. (26 September Ruling at 9.) With due regard for the *Barker* factors, we agree that these reasons justified the delay in preferring the two specifications. Accordingly, we will dismiss the two specifications without prejudice.

### Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings of guilty of Charges I and III and their specifications are set aside and those charges and specifications are dismissed with prejudice. The findings of guilty of Charge II and its Specification 2 are set aside, and Specifications 1 and 2 of Charge II are dismissed with prejudice. Specification 1 of Charge IV is dismissed with prejudice. The findings of guilty of Charge IV and its Specification 2 are set aside. Charge II and its Specification 3 and Charge IV and its Specification 2 are dismissed without prejudice.

Judge DUIGNAN concurs.

KOVAC, Judge (concurring in part and dissenting in part):

I concur with all but one aspect of the majority opinion.  I do not concur with my fellow judges on the disposition of Charge IV, Specification 2 being dismissed without prejudice. Though I do believe dismissal is warranted, I believe the specification should be dismissed with prejudice under Article 10, finding that the military judge made an erroneous ruling with regard to this specification.  Simply stated, the information pertaining to this specification was intertwined with all the other information that formed a basis for Appellant to be placed in pretrial confinement not just once, but twice, and was purportedly known to the Government upon commencing its initial investigation.

"The standard of diligence under which we review claims of a denial of speedy trial under Article 10 'is not constant motion, but reasonable diligence in bringing the charges to trial.' "  *U.S. v Wilson*, 72 MJ 347, 351 (C.A.A.F. 2013), citing *U.S. v Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005).  "Short periods of inactivity are not fatal to an otherwise active prosecution." *Mizgala*, 61 M.J. at 127.  "[O]ur framework to determine whether the Government proceeded with reasonable diligence includes balancing the following four factors:  (1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant."  *Id.* at 129 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).  The Supreme Court explained that these four principles are "related factors and must be considered together with such other circumstances as may be relevant.  In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process."  (*Barker*, 407 U.S. at 533).

With the above principles in mind, the majority in this case found the *Barker* factors weighed heavily in Appellant's favor, resulting in the court's decision to dismiss with prejudice under an Article 10 analysis, excepting Charge II, Specification 3, and Charge IV, Specification 2, which were separately analyzed and dismissed without prejudice under R.C.M. 707.  I disagree that the offense in Charge IV, Specification 2 arose subsequent to the conclusion of the CGIS investigation results and was not in consideration by the Government from the start of this

case. In fact, Appellant's interview by the special agent on 20 July 2012 illuminated the direction forward in the course of the investigation, from seizing Appellant's electronics to the search of specific key words. The Government then capitalized on Appellant's own admissions to supplement its requests (even if not expressly stated, certainly alluded to) in its efforts to have the member placed in pretrial confinement both in July 2012 and December 2012. (*See* Appellate Ex. XVI, encl 1; Appellate Ex. XVIII, encl 4; Appellate Ex. XIX, encl 4; Appellate Ex. XXI, encl 1.)

Appellant rightly points out that from the date of the first CGIS interview (which included an FBI officer, suggesting the seriousness of all the allegations), the Government had knowledge of the offense eventually charged. Yet, even when Appellant was placed in pretrial confinement, or restricted, or had conditions of liberty placed upon him, or then again placed in pretrial confinement, he was still not provided notice that he was being charged with this offense. This, seemingly, is in direct conflict with the *Barker* test and what Appellant had notice to defend against:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests:
> (i)      to prevent oppressive pretrial incarceration;
> (ii)     to minimize anxiety and concern of the accused; and
> (iii)    to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system

*Barker*, 407 U.S. at 532, 92 S.Ct. 2182.

In addition, though Article 10 does not require "constant motion," it does require some diligence and reasonableness by the Government in its pursuit. Even though Appellant's counsel made numerous requests for action and pressed for a speedy trial, there appeared to be very little indication of any real "activity" on the part of the Government. The flurry of activity to investigate seemed to fall flat after the initial stages of discovery in mid-summer 2012. Claims of distance and excessive workload were offered as explanations to the investigative delays, followed by later remarks espousing this as a very complex case requiring more time to explore. Even when it was evident the Government had knowledge of the offense (i.e. Appellant's

statement, the special agent's analysis in September 2012, to the CGIS ECS report on 1 March 2013), Appellant's requests for trial went unheeded. It is perplexing trying to understand how and why procedural standards set forth in the U.S. Constitution and Manual for Courts-Martial (Article 10 inclusive) can be disregarded. I find it of great concern. We need to be cognizant of why such safeguards were implemented and protect them.



For the Court,

L. I. McClelland
Chief Judge